[Cite as *State v. Boykin*, 2012-Ohio-1381.]

STATE OF OHIO         )
                            )ss:
COUNTY OF SUMMIT    )

| | |
|---|---|
| STATE OF OHIO | C.A. No. 25752 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO CASE No. CR 92 03 0635 |
| MONTOYA L. BOYKIN | |
| Appellant | |
| | |
| CITY OF AKRON | C.A. No. 25845 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE AKRON MUNICIPAL COURT COUNTY OF SUMMIT, OHIO CASE Nos. 87 CRB 05482 |
| MONTOYA L. BOYKIN | 91 CRB 07522 |
| Appellant | 96 CRB 14102 |

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

DECISION AND JOURNAL ENTRY

Dated: March 30, 2012

---

CARR, Judge.

**{¶1}** Appellant, Montoya Boykin, appeals orders of the Summit County Court of Common Pleas and Akron Municipal Court that denied her motions to seal the record of her convictions. We affirm.

I.

**{¶2}** In 1992, Boykin pled guilty to one count of receiving stolen property in a case originating in the Summit County Court of Common Pleas. She moved to seal her record in

1996 and 2000, and the trial court denied both motions. In 1996, she pled no contest to and was convicted of two counts of theft by the Akron Municipal Court. In 2009, Governor Ted Strickland pardoned Boykin for these three offenses. Boykin moved both courts to seal her record, arguing that the trial courts were required to exercise their inherent judicial authority to do so by virtue of the pardon. Both motions were denied, and Boykin appealed. This Court consolidated the appeals for oral argument and decision.

II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY DENYING APPELLANT BOYKIN'S MOTION TO SEAL HER PARDONED CONVICTIONS.

{¶3} Boykin's assignment of error is that the trial courts erred by denying her motions to seal her records. Specifically, she has argued that the existence of the executive pardon required the trial court to do so as an exercise of its inherent judicial powers.

JUDICIAL EXPUNGEMENT

{¶4} Underlying Ms. Boykin's argument is the assumption that a trial court has the inherent authority to seal criminal records when the defendant has been pardoned, even when the defendant is not eligible under the relevant statute. This is not, however, a foregone conclusion, nor is it an insignificant issue in this case. Boykin concedes that she is not eligible to have her records sealed under the relevant statutes. If the trial courts did not have the authority to seal her records from some other source, then our inquiry need go no further.

{¶5} A first offender may move to have the record of conviction of eligible offenses sealed under R.C. 2953.32. *See also* R.C. 2953.36 (describing the convictions that preclude sealing). R.C. 2953.52 also permits the official record of a criminal case to be sealed if the defendant was acquitted, the case was dismissed, or a grand jury returned a no bill. Apart from

these statutes, a record of conviction may be sealed only "where such unusual and exceptional circumstances make it appropriate to exercise jurisdiction over the matter[.]" *Pepper Pike v. Doe*, 66 Ohio St.2d 374 (1981), paragraph two of the syllabus. In *Pepper Pike*, the Ohio Supreme Court considered whether the case record of a defendant could be sealed when the charges against her were dismissed with prejudice before trial. *Id*. at paragraph one of the syllabus. Because the predecessor of the current statutes only provided for expungement of a conviction, the Court considered whether trial courts had authority to grant expungement without statutory authorization. *Id*. at 377. The Court concluded that trial courts have the inherent authority to expunge records apart from the statutes when justified by "unusual and exceptional circumstances" founded on constitutional guarantees of the right to privacy. *Id.* The Court emphasized, however, that this judicial power should not be exercised as a matter of course:

> Again, this is the exceptional case, and should not be construed to be a carte blanche for every defendant acquitted of criminal charges in Ohio courts. Typically, the public interest in retaining records of criminal proceedings, and making them available for legitimate purposes, outweighs any privacy interest the defendant may assert.

*Id.*, citing *Chase v. King*, 267 Pa.Super. 498 (1979). The Court also concluded that exercise of this discretionary power should, for purposes of consistency, not obliterate the fact of the criminal record, but that a record so expunged "will remain an historical event," available for inspection and use as provided in the expungement statute then in place. *Id*. at 378.

{¶6} *Pepper Pike* has not been broadly applied. Before the enactment of R.C. 2953.52(A), for example, this Court held that trial courts did not have the authority to expunge the records of individuals who had been acquitted of the charges against them. *See State v. Stadler*, 14 Ohio App.3d 10, 11 (9th Dist.1983). Other courts concluded that judicial expungement was not available to defendants who had been convicted of a crime but were

ineligible for statutory expungement. *See State v. Netter*, 64 Ohio App.3d 322, 325-326 (4th Dist.1989); *State v. Weber*, 19 Ohio App.3d 214, 217-218 (1st Dist.1984); *State v. Moore*, 31 Ohio App.3d 225, 227 (8th Dist.1986). *See also State v. Spicer*, 1st Dist. No. C-040637, 040638, 2005-Ohio-4302, ¶ 12 ("Prior to the passage of R.C. 2953.52, expungement was an equitable remedy reserved for extraordinary cases in which the defendant was not only acquitted, but also factually exonerated."). In other words, courts concluded that "[w]here there has been a conviction, only statutory expungement is available." *State v. Davidson*, 10th Dist. No. 02AP-665, 2003-Ohio-1448, ¶ 15.

{¶7} Nonetheless, "the judicial power to grant an expungement request still exists, * * * [but] it is limited to cases where the accused has been acquitted or exonerated in some way and protection of the accused's privacy interest is paramount to prevent injustice." *State v. Chiaverini*, 6th Dist. No. L-00-1306, 2001 WL 256104, *2 (Mar. 16, 2001). Despite the enactment of R.C. 2953.32 and 2953.52, exercise of judicial authority to expunge records is warranted in exceptional cases:

> [w]hile it may be argued that it is inappropriate for courts to supersede legislative judgment by granting judicial expungement where the legislature has specifically removed statutory expungement as a remedy, it is in such situations where the judicial expungement remedy may well be most appropriate. Judicial expungement is a *constitutional* remedy, and it is elementary that although the legislature has freedom to provide greater protections, it has no authority to place limits on rights guaranteed under the Constitution.

(Emphasis in original.) *In re Application to Seal Record of No Bill*, 131 Ohio App.3d 399, 403 (3d Dist.1999). It therefore stands to reason that, the limitations of R.C. 2953.32 notwithstanding, a trial court has the authority to grant judicial expungement in situations in which an executive pardon is at issue.

EFFECT OF PARDON

{¶8} Given that trial courts have the authority to grant judicial expungement when a pardon is at issue, the question remains whether the nature of the executive pardon itself requires them to do so in every case. We conclude that it does not.

{¶9} The Ohio Constitution gives the governor "power, after conviction, to grant reprieves, commutations, and pardons * * * upon such conditions as the governor may think proper[.]" Ohio Constitution, Article III, Section 11. A "pardon" is defined as "the remission of penalty by the governor in accordance with the power vested in the governor by the constitution." R.C. 2967.01(B). It "relieves the person to whom it is granted of all disabilities arising out of the conviction or convictions from which it is granted." R.C. 2967.04(B). The recipient of a pardon is, therefore, relieved of the disabilities imposed by R.C. 2961.01(A)(1) and is no longer "incompetent to be an elector or juror or to hold an office of honor, trust, or profit." R.C. 2961.01(A)(2).

{¶10} Noting that a pardon restores the civil rights of the recipient, the Ohio Supreme Court has described the effect of pardons:

> "In contemplation of law it so far blots out the offense, that afterwards it cannot be imputed to him to prevent the assertion of his legal rights. It gives him a new credit and capacity, and rehabilitates him to that extent in his former position", and hence its effect "is to make the offender a new man." It is, in effect, a reversal of the judgment, a verdict of acquittal, and a judgment of discharge thereon, to this extent, that there is a complete estoppel of record against further punishment pursuant to such conviction.

(Internal citations omitted.) *Knapp v. Thomas*, 39 Ohio St. 377, 381 (1883). Context is key to understanding the Court's explanation in *Knapp*, which Boykin cites in support of her assignment of error. A careful reading of the Court's language, however, leads to the conclusion that a pardoned individual is "a new man" insofar as the restoration of competency and the

further imposition of punishment are concerned. *See id.* A pardon, so understood, does not wipe away all traces of the criminal case.

{¶11} Current laws support this conclusion. For example, R.C. 2961.01(A)(2) provides:

[t]he full pardon of a person who under division (A)(1) of this section is incompetent to be an elector or juror or to hold an office of honor, trust, or profit restores the rights and privileges so forfeited under division (A)(1) of this section, *but a pardon shall not release the person from the costs of a conviction in this state, unless so specified.*

(Emphasis added.) R.C. 2961.01 does not provide that a pardon restores the recipient's competency under R.C. 2961.01(B) to "circulate or serve as a witness for the signing of any declaration of candidacy and petition, voter registration application, or nominating, initiative, referendum, or recall petition," although such a person may be restored by operation of R.C. 2967.16(C). 2010 Ohio Atty.Gen.Ops. No. 2010-002, 2010 WL 292684, *2. A pardon does not automatically remove the recipient's disability with respect to carrying a concealed weapon. *See* R.C. 2923.14(C) (requiring an individual to petition the court of common pleas for the removal of the disability, reciting "any partial or conditional pardon granted" as well as "facts showing the applicant to be a fit subject for relief[.]").

{¶12} Consistent with the definition of a pardon as "remission of penalty," as set forth in R.C. 2967.01(C), it is also apparent that an executive pardon does not eradicate the fact of the underlying conduct. Despite a pardon, for example, the character of an offense may be relevant for purposes of employment. *See State ex rel. Atty. Gen. v. Hawkins*, 44 Ohio St. 98, 117 (1886) ("Whatever the theory of the law may be as to the effect of a pardon, it cannot work such moral changes as to warrant the assertion that a pardoned convict is just as reliable as one who has constantly maintained the character of a good citizen."). An attorney who has been indefinitely suspended from practicing law is not automatically entitled to reinstatement when the underlying

offense has been pardoned. *See In re Bustamante*, 100 Ohio St.3d 39, 2003-Ohio-4828, ¶ 3-5 (requiring an attorney to complete the prerequisites for reinstatement that had been set by the Supreme Court of Ohio notwithstanding a presidential pardon.). A pardoned offense may be considered in subsequent prosecutions. *Carlesi v. New York*, 233 U.S. 51, 59 (1914). Although evidence of a conviction is not generally admissible in Ohio to impeach a witness, it may be admitted if the witness subsequently committed certain crimes. Evid.R. 609(C).

{¶13} If it is to be maintained that "in the eye of the law, [a pardoned] offender is as innocent as if he had never committed the offense," these examples of collateral consequences that remain after a pardon lead us to agree with one commentator, who has observed that in that case, "the eyesight of the law is very bad." Williston, *Does a Pardon Blot Out Guilt?*, 28 Harv.L.Rev. 647, 648 (1918), quoting *Ex Parte Garland*, 71 U.S. 333 (1866). We conclude, therefore, that a pardon does not conclusively entitle the recipient to have the record sealed. This conclusion is in accord with the majority of courts that have considered the question. *See U.S. v. Noonan*, 906 F.2d 952, 960 (3d Cir.1990); *R.J.L. v. State*, 887 So.2d 1268 (Fla.2004); *State v. Blanchard*, 100 S.W.3d 226, 228 (Tenn.App.2002); *State v. Aguirre*, 73 Wash.App. 682, 690 (Wash.App.1994); *State v. Skinner*, 632 A.2d 82 (Del.1993); *State v. Bachman*, 675 S.W.2d 41, 52 (Mo.App.1984); *Commonwealth v. Vickey*, 381 Mass. 762, 771 (Mass.1980); *People v. Glisson*, 69 Ill.2d 502, 506 (Ill.1978).

{¶14} We recognize that a minority of courts that have addressed the issue disagree. *See State v. Cope*, 111 Ohio App.3d 309 (1st Dist.1996); *State v. Bergman*, 558 N.E.2d 1111, 1114 (Ind.App.1990); *Commonwealth v. C.S.*, 517 Pa. 89, 92 (Pa.1987). Nonetheless, we conclude that this result is correct. In Ohio, the legislature has not provided for sealing records of a

pardoned individual by statute. Some other jurisdictions have done so. *See R.J.L.*, 887 So.2d at 1279 fn4. In this respect, we must defer to the legislative process.

CONCLUSION

**{¶15}** A pardon under Article III, Section 11, of the Ohio Constitution does not automatically entitle the recipient of the pardon to have the record of conviction sealed. A trial court may exercise its authority to order judicial expungement but, as the Ohio Supreme Court concluded in *Pepper Pike*, this authority should not be exercised as a matter of course, but "where such unusual and exceptional circumstances make it appropriate to exercise jurisdiction over the matter[.]" *Pepper Pike*, 66 Ohio St.2d 374 at paragraph two of the syllabus. In this case, Boykin's motions to seal her record relied exclusively on her position that she was entitled to relief by virtue of the pardon, and the record on appeal does not contain evidence beyond that argument. Consequently, consideration of whether her motions should have been granted under the analysis set forth above is premature, and this Court takes no position in that respect.

III.

**{¶16}** Boykin's assignment of error is overruled, and the judgments of the Summit County Court of Common Pleas and the Akron Municipal Court are affirmed.

Judgments affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas and Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into

execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

DICKINSON, J.
CONCURS.

BELFANCE, P. J.
DISSENTING.

{¶17} I respectfully dissent. The question presented to this Court is whether a person who has received a full and unconditional pardon for certain offenses is entitled to have the public records of those convictions sealed.

{¶18} As an initial matter, and as discussed by majority, I agree that the trial court has inherent authority to order the sealing. *See Pepper Pike v. Doe*, 66 Ohio St.2d 374, 377-378 (1981).

{¶19} Even prior to the existence of statutory sealing provisions, the Supreme Court of Ohio discussed the effect and breadth of an unconditional pardon. It has stated that:

a pardon reaches both the punishment prescribed for the offense and the guilt of the offender. It obliterates, in legal contemplation, the offense itself. In contemplation of law it so far blots out the offense, that afterwards it cannot be imputed to him to prevent the assertion of his legal rights. It gives him a new credit and capacity, and rehabilitates him to that extent in his former position and hence its effect is to make the offender a new man. It is, in effect, a reversal of the judgment, a verdict of acquittal, and a judgment of discharge thereon, to this extent, that there is a complete estoppel of record against further punishment pursuant to such conviction.

(Internal quotations and citations omitted.) *Knapp v. Thomas*, 39 Ohio St. 377, 381 (1883). The legal effect of a pardon is grounded upon the Supreme Court's recognition of the executive's constitutional authority to make a pardon. *See* Ohio Constitution, Article III, Section 11. The Ohio Supreme Court has more recently reiterated the principle that a full pardon has the effect of removing both the punishment and guilt of the offender. In *State ex rel. Gordon v. Zangerle,* 136 Ohio St. 371 (1940), it stated "[a] full pardon purges away all guilt and leaves the recipient from a legal standpoint, in the same condition as if the crime had never been committed." *Id.* at 376. If a full pardon leaves a person from a legal standpoint as if the crime had never been committed, and obliterates the offense itself, it is difficult to envision how a public document that contains the imposition of guilt could appropriately remain in the public domain.

{¶20} In examining whether sealing is appropriate subsequent to a full and unconditional pardon, I find the reasoning and analysis of the First District's *State v. Cope*, 111 Ohio App.3d 309 (1st Dist.1996), to be very logical and persuasive. As noted in *Cope*, R.C. 2967.04(B) provides that "[a]n unconditional pardon relieves the person to whom it is granted of *all* disabilities arising out of the conviction or convictions from which it is granted." (Emphasis added.) *See Cope* at 311. While the majority concludes that a pardon relieves a person of only those disabilities imposed by R.C. 2961.01(A)(1), R.C. 2967.04(B) does not reference R.C. 2961.01(A)(1), nor does it include limiting language. I would interpret the word "all" to mean

just that, *all disabilities*. I think any reasonable person would agree that having a conviction be part of public record for all to see is a disability. Moreover, I do not find the majority's recitation of actions that persons granted pardons must take to restore themselves to full competency to be a compelling argument in support of its position. The fact that someone has to take action to receive the full benefits of the pardon does not necessitate the conclusion that the person is not entitled to those benefits. Thus, in my view, it is logical that sealing the public records of a conviction would go hand in hand with a full and unconditional pardon. As the Court in *Cope* stated, "[a] pardon without expungement is not a pardon." (Internal quotations and citation omitted.) *Cope* at 312. Furthermore, even though a public court record might be sealed, it does not mean that is destroyed. *See, e.g., Pepper Pike,* 66 Ohio St.2d at 378. ("[E]xpungement does not literally obliterate the criminal record * * * [as] [t]he sealed record of the case may be inspected by any law enforcement authority or prosecutor to aid in the decision to file charges on any subsequent offenses involving the defendant.").

{¶21} Accordingly, the only way to give full effect to the broad language of Supreme Court precedent and the statute, and thus the pardon itself, is to order the sealing of the records of a person who has received a full and unconditional pardon. Thus, I respectfully dissent.

<u>APPEARANCES</u>:

JOANN SAHL, Appellate Review Office, School of Law, The University of Akron, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

CHERI B. CUNNINGHAM, Director of Law, and DOUGLAS J. POWLEY, Chief City Prosecutor, for Appellee.