THE STATE OF OHIO, APPELLEE, *v.* BOYKIN, APPELLANT.

THE CITY OF AKRON, APPELLEE, *v.* BOYKIN, APPELLANT.

[Cite as *State v. Boykin*, 138 Ohio St.3d 97, 2013-Ohio-4582.]

*Criminal Law—Sealing of records—Gubernatorial pardon does not automatically entitle the recipient to have the record of the pardoned conviction sealed.*

(Nos. 2012-0808 and 2012-1216—Submitted April 10, 2013—Decided October 22, 2013)

APPEAL from and CERTIFIED by the Court of Appeals for Summit County, Nos. 25752 and 25845, 2012-Ohio-1381.

_____

SYLLABUS OF THE COURT

A gubernatorial pardon does not automatically entitle the recipient to have the record of the pardoned conviction sealed.

_____

LANZINGER, J.

{¶ 1} The issue in this appeal is whether a gubernatorial pardon automatically entitles the recipient to have the record of the pardoned conviction sealed. We hold that the sealing of a record is not an entitlement that flows from a pardon.

**I. Case Background**

{¶ 2} Appellant, Montoya Boykin, was convicted six times between 1987 and 2007 for different offenses. In January 2007, she filed an application for executive clemency with the Ohio Adult Parole Authority, requesting a pardon for four of those convictions. Former Ohio Governor Ted Strickland granted the pardon. At issue in this case is Boykin's attempt to seal the records of three of the pardoned convictions. A chronology of events follows.

**{¶ 3}**  In 1987, Boykin pled guilty to first-degree-misdemeanor theft in Akron Municipal Court.  Boykin was convicted of another theft offense in 1991 in Akron Municipal Court.  She pled guilty in 1991 to a theft offense in Cuyahoga County Common Pleas Court.  In 1992, Boykin pled guilty in Summit County Common Pleas Court to receiving stolen property ("RSP"), a felony of the fourth degree.  Boykin was convicted of a fourth theft offense near the end of 1996 in Akron Municipal Court following a plea of no contest.

**{¶ 4}**  In 1996, Boykin filed her first motion to seal the record of her RSP conviction.  The Summit County Common Pleas Court determined that she was not eligible to have the record of that offense sealed and denied the motion.  She filed a second request to seal the record of that conviction in August 2000, which was also denied.  In its ruling, the trial court specified that the denial was because she was not a first-time offender.

**{¶ 5}**  In January 2007, Boykin filed an application for executive clemency, requesting a pardon for the 1991 theft conviction in Cuyahoga County, the 1991 and 1996 theft convictions in Akron Municipal Court, and the 1992 RSP conviction in Summit County.  Prior to the parole board's hearing on her application, she purportedly informed the board that she had been convicted in March 2007 of disorderly conduct.  The record is unclear regarding the details of that conviction.  The parole board voted unanimously to recommend clemency.  Former Governor Strickland issued a warrant of pardon for Boykin on the three counts of theft and one count of RSP in November 2009.

**{¶ 6}**  In June 2010, Boykin filed a third motion to seal her criminal record of the RSP conviction in Summit County Common Pleas Court.  She filed similar applications in Akron Municipal Court for the three theft convictions that had been entered in that court.  In each of the motions, she argued that she is entitled to have her records sealed due to the governor's pardon.

{¶ 7} In December 2010, the Summit County Common Pleas Court denied Boykin's motion, stating:

> The Defendant's prior criminal history is lengthy. However, for reasons unknown to this Court, convictions dating * * * through 1996 were pardoned by Governor Strickland. Therefore, the Defendant is technically eligible for sealing. However, in light of the Defendant's prior propensity for theft, the Court finds that the interests of the State in maintaining this conviction outweigh the interest of the Defendant in having her case sealed.

{¶ 8} The Akron Municipal Court also denied Boykin's applications to seal her records of conviction in that court. After noting that Boykin had withdrawn her request to have the record of the 1987 conviction sealed because that case was not included in the pardon, the municipal court found that "absent statutory clarification, a pardon does not automatically entitle a petitioner to a sealing of the conviction because the pardon does not have the effect of erasing the conviction itself." The municipal court then employed the balancing test set forth in *Pepper Pike v. Doe*, 66 Ohio St.2d 374, 421 N.E.2d 1303 (1981), and determined that "the equities do not weigh in favor of the Defendant."

{¶ 9} Boykin appealed the decisions to the Ninth District Court of Appeals. In affirming the lower courts' judgments after consolidating the appeals, the court of appeals concluded:

> A pardon under Article III, Section 11, of the Ohio Constitution does not automatically entitle the recipient of the pardon to have the record of conviction sealed. A trial court may exercise its authority to order judicial expungement but, as the

Ohio Supreme Court concluded in *Pepper Pike*, this authority should not be exercised as a matter of course, but "where such unusual and exceptional circumstances make it appropriate to exercise jurisdiction over the matter[.]" *Pepper Pike*, 66 Ohio St.2d 374, 421 N.E.2d 1303, at paragraph two of the syllabus. In this case, Boykin's motions to seal her record relied exclusively on her position that she was entitled to relief by virtue of the pardon, and the record on appeal does not contain evidence beyond that argument.

*State v. Boykin*, 9th Dist. Summit Nos. 25752 and 25845, 2012-Ohio-1381, ¶ 15.

{¶ 10} The Ninth District granted Boykin's motion to certify a conflict, holding that its judgment conflicted with the judgment of the First District in *State v. Cope*, 111 Ohio App.3d 309, 676 N.E.2d 141 (1st Dist.1996). We recognized that a conflict exists and also accepted Boykin's discretionary appeal. 132 Ohio St.3d 1512, 2012-Ohio-4021, 974 N.E.2d 111. The sole issue before this court is whether a pardon automatically entitles the recipient to have his or her record of conviction of the pardoned offense sealed.

## II. Legal Analysis

*A. Sealing of Records*

{¶ 11} The sealing of a criminal record, also known as expungement, *see State v. Pariag*, 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 11, is an "act of grace created by the state." *State v. Hamilton*, 75 Ohio St.3d 636, 639, 665 N.E.2d 669 (1996). It should be granted only when all requirements for eligibility are met, because it is a "privilege, not a right." *State v. Futrall*, 123 Ohio St.3d 498, 2009-Ohio-5590, 918 N.E.2d 497, ¶ 6.

{¶ 12} The procedure for obtaining an expungement of a record of a criminal conviction was first enacted by the General Assembly in 1973.

Am.Sub.S.B. No. 5, 135 Ohio Laws, Part I, 70. The current version of that legislation, which is substantially similar to the original enactment, provides that an eligible offender can have a record of conviction sealed if a trial court determines that there is no criminal proceeding against the applicant, the expungement of the record of conviction is consistent with the public interest, and the applicant's rehabilitation has been attained to the satisfaction of the court. R.C. 2953.32(C)(2); *see also* R.C. 2953.32(C)(1). An eligible offender is defined as

> anyone who has been convicted of an offense in this state or any other jurisdiction and who has not more than one felony conviction, not more than two misdemeanor convictions if the convictions are not of the same offense, or not more than one felony conviction and one misdemeanor conviction in this state or any other jurisdiction.

R.C. 2953.31(A).

{¶ 13} We have previously addressed whether a defendant charged with but not convicted of a criminal offense could have that criminal record sealed. *Pepper Pike v. Doe*, 66 Ohio St.2d 374, 421 N.E.2d 1303. The appellant in *Pepper Pike* had been charged with assault. The criminal complaint against her was dismissed with prejudice before trial, and given the facts of the case, it was clear that the appellant's former husband and his current wife were using the courts to harass the appellant. *Id.* at 377. The appellant then filed a motion for expungement of her arrest record. But because she was not a first-time offender under R.C. 2953.32 in that she had never been convicted of a crime, *id.* at 376, fn. 4, the municipal court denied the motion, concluding that it had no jurisdiction over the expungement request, *id.* at 375.

{¶ 14} We reversed, holding that "trial courts in Ohio have jurisdiction to order expungement and sealing of records in a criminal case where the charges are dismissed with prejudice prior to trial by the party initiating the proceedings." *Id.* at paragraph one of the syllabus. We stated that the basis for this expungement is found in the constitutional right to privacy, but noted that there is not an absolute right to expungement as a matter of course even for those individuals who were not convicted. *Id.* at 376-377. Instead, trial courts must balance the interest of the applicant "in his good name and right to be free from unwarranted punishment against the legitimate need of government to maintain records." *Id.* at 377.

{¶ 15} This court cautioned, however, that

> this is the exceptional case, and should not be construed to be a carte blanche for every defendant acquitted of criminal charges in Ohio courts. Typically, the public interest in retaining records of criminal proceedings, and making them available for legitimate purposes, outweighs any privacy interest the defendant may assert.

*Id.*

{¶ 16} Shortly after *Pepper Pike*, the General Assembly closed the gap in the expungement statutes illustrated by that case and enacted R.C. 2953.52. Am.Sub.H.B. No. 227, 140 Ohio Laws, Part 1, 2382, 2387-2388. Pursuant to that statute, a person who has been found not guilty; who has had a criminal complaint, indictment, or information dismissed; or against whom the grand jury has returned a no bill may apply to the court for an order to seal the official records of that case. R.C. 2953.52(A). Like the procedure established in R.C. 2953.32, the court is required to weigh the applicant's interests in having the

records sealed against the legitimate needs, if any, of the government to maintain the records. R.C. 2953.52(B)(2)(d); *see* R.C. 2953.32(C)(1)(e).

{¶ 17} Neither R.C. 2953.32 nor R.C. 2953.52 currently provides that a gubernatorial pardon automatically entitles the recipient to have the records of the conviction sealed. In fact, the word "pardon" does not appear in either of those statutes. But Boykin argues that the pardon itself automatically entitles her to have her records sealed, even though she does not qualify under the expungement statutes. Her appeal does not challenge the lower courts' determinations that she is not entitled to a discretionary sealing of the record under *Pepper Pike*, and thus, the narrow legal issue before us is whether a pardon requires a court to seal the record of the pardoned offenses.

B. *The Power to Pardon*

{¶ 18} The Ohio Constitution, Article III, Section 11 provides,

The governor shall have power, after conviction, to grant reprieves, commutations, and pardons, for all crimes and offenses, except treason and cases of impeachment, upon such conditions as the governor may think proper; subject, however, to such regulations, as to the manner of applying for commutations and pardons, as may be prescribed by law. * * * The governor shall communicate to the General Assembly, at every regular session, each case of reprieve, commutation, or pardon granted, stating the name and crime of the convict, the sentence, its date, and the date of the commutation, pardon, or reprieve, with the governor's reasons therefor.

{¶ 19} The only limits that can be placed on the governor's ability to grant a pardon are those specifically authorized by Article III, Section 11 of the Ohio

Constitution. *Knapp v. Thomas*, 39 Ohio St. 377, 392 (1883). The Ohio Constitution allows the General Assembly to prescribe procedural prerequisites to the application process for pardons, but the legislature may not prescribe substantive regulations concerning the governor's discretion in granting a pardon. *State ex rel. Maurer v. Sheward*, 71 Ohio St.3d 513, 519-520, 644 N.E.2d 369 (1994). We have also held that the governor's exercise of discretion in using the clemency power is not subject to judicial review. *Knapp* at 391.

*C. The Effect of a Pardon*

{¶ 20} The term "pardon" is not defined or further explained in the Constitution. *Sterling v. Drake*, 29 Ohio St. 457, 460 (1876). We have stated that "[a] full and absolute pardon releases the offender from the entire punishment prescribed for his offense, and from all the disabilities consequent on his conviction." *State ex rel. Atty. Gen. v. Peters*, 43 Ohio St. 629, 650, 4 N.E. 81 (1885). Similarly, the General Assembly defines "pardon" as "the remission of penalty by the governor in accordance with the power vested in the governor by the constitution." R.C. 2967.01(B). R.C. 2967.04(B) further provides that "[a]n unconditional pardon relieves the person to whom it is granted of all disabilities arising out of the conviction or convictions from which it is granted."

{¶ 21} Boykin argues that because a pardon relieves the recipient of all disabilities arising out of the conviction, a judicial expungement is necessary to remove the "disability" that results from having a criminal record. The failure to seal the criminal record, according to Boykin, encroaches on the governor's constitutional authority to issue a pardon and undermines the pardon's impact. She contends that having a criminal record imposes real and lasting negative consequences such as difficulty in finding employment, in obtaining housing, and in establishing eligibility for public benefits. Boykin also argues that because our case law holds that an absolute pardon reaches both punishment and the

8

underlying conviction, court sealing of the pertinent criminal record must accompany the pardon.

1. No Invalidation of Conviction

{¶ 22} We first address Boykin's contention that a pardon covers both the conviction and the sentence of the pardoned offense and that it therefore should automatically entitle her to have her records sealed. In support of this argument, Boykin quotes the following passage from *Knapp*, 39 Ohio St. at 381:

> "[A] pardon reaches both the punishment prescribed for the offense and the guilt of the offender." *Ex parte Garland,* [71 U.S.] 333, 380 [4 Wall. 333, 18 L.Ed. 366 (1866)]. * * * It is, in effect, a reversal of the judgment, a verdict of acquittal, and a judgment of discharge thereon, to this extent, that there is a complete estoppel of record against further punishment pursuant to such conviction.

{¶ 23} Context, however, reveals that this language is simply dicta. In *Knapp*, the issue before us was whether the petitioner was entitled to a writ of habeas corpus. Knapp had been convicted of murder and sentenced to life imprisonment. The governor granted Knapp a full pardon, and Knapp was released from prison. Shortly thereafter, the governor declared that the pardon had been obtained by fraud and ordered the warden to rearrest Knapp. After his reincarceration, Knapp sought a writ of habeas corpus. The warden argued that Knapp's detention was proper because the pardon was void due to fraud and because the governor had revoked the pardon. *Id*. at 377-379. We disagreed and held that a full, unconditional pardon is irrevocable. *Id.* at syllabus. We also were unwilling to sanction a principle that would authorize this court or any other court to impeach a pardon in a collateral proceeding on the ground of fraud. *Id.* at 391.

**{¶ 24}** Boykin contends that this court in *State ex rel. Gordon v. Zangerle,* 136 Ohio St. 371, 376, 26 N.E.2d 190 (1940), "reaffirmed" *Knapp* and other precedents by stating that a pardon "purges away all guilt and leaves the recipient from a legal standpoint, in the same condition as if the crime had never been committed." She also relies on *State v. Morris*, 55 Ohio St.2d 101, 378 N.E.2d 708 (1978), which included similar remarks. Again, we find that the statements regarding the effect of a pardon in these cases are dicta. In *Zangerle*, the issue was whether the system of probation in Cuyahoga County was constitutional. *Id.* at 374. In *Morris,* we answered whether the General Assembly had the authority to enact legislation permitting a trial court to consider abrogating a previous conviction or reducing a previously imposed sentence for prisoners whose original offense of conviction was eliminated by newly enacted statutes or whose punishment would have been less harsh under newly enacted statutes. *Id.* at 104. As in *Knapp*, the scope of a pardon was not in any way at issue in either case.

**{¶ 25}** Moreover, the language in the federal case that *Knapp* relied upon, *Ex parte Garland,* 71 U.S. at 380, 18 L.Ed. 366, which engendered *Knapp*'s dicta regarding the effect of a pardon, has itself been dismissed as dictum by numerous courts. *E.g.*, *In re Abrams*, 689 A.2d 6, 17 (D.C.App.1997) (noting that by the time the opinion in *Garland* reached the issue of the pardon, "the case had already been decided" on other grounds); *United States v. Noonan*, 906 F.2d 952, 958 (3d Cir.1990) (stating that the language in *Garland* is clearly dictum and that "a pardon does not vitiate guilt"). *See also Bjerkan v. United States*, 529 F.2d 125, 128 (7th Cir.1975), fn. 2 (declaring that a pardon does not "restore the offender to a state of innocence in the eye of the law as was suggested" in *Garland*).

**{¶ 26}** The United States Supreme Court has also considerably narrowed *Garland*'s statement regarding the effect of a pardon. *See Angle v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co.,* 151 U.S. 1, 19, 14 S.Ct. 240, 38 L.Ed. 55 (1894) (although an executive pardon relieves the wrongdoer from public

punishment, it does not relieve the wrongdoer from civil liability); *Burdick v. United States*, 236 U.S. 79, 94, 35 S.Ct. 267, 59 L.Ed. 476 (1915) (a pardon "carries an imputation of guilt; acceptance a confession of it"); *Carlesi v. New York*, 233 U.S. 51, 59, 34 S.Ct. 576, 58 L.Ed. 843 (1914) (in sentencing a defendant as a habitual offender, a court may consider "past offenses committed by the accused as a circumstance of aggravation, even although for such past offenses there had been a pardon granted"); *Nixon v. United States*, 506 U.S. 224, 232, 113 S.Ct. 732, 122 L.Ed.2d 1 (1993) ("the granting of a pardon is in no sense an overturning of a judgment of conviction by some other tribunal; it is '[a]n executive action that mitigates or sets aside *punishment* for a crime.' *Black's Law Dictionary* 1113 (6th Ed.1990)" [emphasis added in *Nixon*]).

{¶ 27} Thus, although a pardon grants the recipient relief from any ongoing punishment for the offense and prevents any future legal disability based on that offense, it does not erase the past conduct. In other words, what's done is done.

2. No Automatic Sealing of Record

{¶ 28} Even if we were to consider, arguendo, that a pardon nullifies the recipient's guilt, nothing in our case law indicates that sealing is required when a conviction is pardoned. As we stated in *Pepper Pike*, "even individuals who have never been convicted are not entitled to expungement of their arrest records as a matter of course." 66 Ohio St.2d at 376-377, 421 N.E.2d 1303.

{¶ 29} We have long recognized that effects from past conduct can continue to linger despite a pardon. For instance, the underlying conduct of a pardoned offense may still be relevant for employment considerations. *State ex rel. Atty. Gen. v. Hawkins*, 44 Ohio St. 98, 116-117, 5 N.E. 228 (1886). This court in that case upheld the governor's decision to remove three police commissioners for hiring a large number of people who were viewed as unfit to act as police officers, including several who had been convicted of offenses that

should have disqualified them from serving on the police force. *Id.* The commissioners attempted to defend their actions by arguing that two of the officers had received presidential pardons for their criminal offenses and should be treated as if they had never been charged with an offense. *Id*. at 102-103. We disagreed, stating:

> Whatever the theory of the law may be as to the effect of a pardon, it can not work such moral changes as to warrant the assertion that a pardoned convict is just as reliable as one who has constantly maintained the character of a good citizen. It is a perversion of language to give to the views expressed by Judge Okey in *Knapp v. Thomas*, 39 Ohio St. 377, such a construction. He never meant any thing of the kind.

*Id.* at 117.

{¶ 30} Furthermore, this court denied an attorney's motion for the termination of his indefinite license suspension in Ohio based on the pardon of his underlying felony conviction. *In re Bustamante*, 100 Ohio St.3d 39, 2003-Ohio-4828, 796 N.E.2d 494. We held that the attorney was required to show full compliance with all conditions for reinstatement under Gov.Bar R. V(10) despite the pardon. *Id.* at ¶ 7.

{¶ 31} The United States Supreme Court has also indicated that the effect of a pardon can be limited: "A pardon is an act of grace by which an offender is released from the consequences of his offence, *so far as such release is practicable and within control of the pardoning power*, or of officers under its direction. * * * It does not make amends for the past." (Emphasis added.) *Knote v. United States*, 95 U.S. 149, 153, 24 L.Ed. 442 (1877). Although the governor may have the power to issue a pardon, an entitlement to the sealing of court

records is not an automatic result of that pardon, because the maintenance of judicial records is not within the governor's control. As one federal court has expressed regarding the United States Constitution:

> Whatever be the effect of a Presidential pardon in other respects, * * * the notion that the President has the ability, through the pardon power vested under Article II, § 2, to tamper with judicial records is a concept jurisprudentially difficult to swallow. The idea flies in the face of the separation of powers doctrine. We need only to note that Article III, § 1 states: "The judicial power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." It is beyond cavil that the maintenance of court records is an inherent aspect of judicial power.

*Noonan*, 906 F.2d at 956.

{¶ 32} The Ohio Constitution also militates against Boykin's argument that a pardon automatically entitles the recipient to have the record of the pardoned conviction sealed. Article III, Section 11 provides:

> The governor shall communicate to the General Assembly, at every regular session, each case of reprieve, commutation, or pardon granted, stating the name and crime of the convict, the sentence, its date, and the date of the commutation, pardon, or reprieve, with the governor's reasons therefor.

In other words, the Constitution contemplates that a record of the conviction and the pardon will be maintained. The governor must report the name of the

offender, the offense, the sentence, and the reasons for the pardon to the General Assembly.

{¶ 33} Nor has the General Assembly provided that the recipient of a pardon is automatically entitled to have the record of the pardoned conviction sealed. Neither R.C. 2953.32 nor R.C. 2953.52 includes a pardon under the factors to consider in sealing a criminal record. On the other hand, R.C. 2967.06 indicates that the warrant of pardon becomes part of the criminal record. It states:

> Warrants of pardon and commutation shall be issued in triplicate, one to be given to the convict, one to be filed with the clerk of the court of common pleas in whose office the sentence is recorded, and one to be filed with the head of the institution in which the convict was confined, in case he was confined.
>
> All warrants of pardon, whether conditional or otherwise, shall be recorded by said clerk and the officer of the institution with whom such warrants and copies are filed, in a book provided for that purpose, which record shall include the indorsements on such warrants. A copy of such a warrant with all indorsements, certified by said clerk under seal, shall be received in evidence as proof of the facts set forth in such copy with indorsements.

{¶ 34} The General Assembly has provided that a pardon does not automatically release a pardoned felon from paying the costs of the conviction. R.C. 2961.01(A)(2); *see also* R.C. 2961.02(C). Read together, R.C. 2961.01(A) and (B) support a determination that a pardon does not automatically remove a person's incompetency to circulate or serve as a witness for certain election-related documents and petitions. Nor does a pardon automatically remove the recipient's disability with respect to firearms. R.C. 2923.14(B)(1).

**{¶ 35}** For all the foregoing reasons, we disagree with the First District's statement that " '[a] pardon without expungement is not a pardon.' " *Cope*, 111 Ohio App.3d at 312, 676 N.E.2d 141, quoting *Commonwealth v. C.S.*, 517 Pa. 89, 93, 534 A.2d 1053 (1987). Although the sealing of a criminal record may complement a pardon, it is not an automatic right that flows from a pardon. Accordingly, we answer the certified-conflict question in the negative.

### III. Conclusion

**{¶ 36}** In summary, while a pardon releases the offender from further punishment prescribed for the offense and removes certain disabilities consequent on the conviction, there is nothing in the Constitution, the Revised Code, or our case law that requires the sealing of a criminal record based on a pardon. It is within the purview of the General Assembly to provide that automatic entitlement to sealing of a criminal record is a consequence of a pardon. But in the absence of such a provision, we hold that a gubernatorial pardon does not automatically entitle the recipient to have the record of the pardoned conviction sealed.

**{¶ 37}** The judgment of the Ninth District Court of Appeals is affirmed.

Judgment affirmed.

PFEIFER, ACTING C.J., SHAW, KENNEDY, and FRENCH, JJ., concur.

O'DONNELL, J., concurs in judgment only.

O'NEILL, J., dissents without opinion.

STEPHEN R. SHAW, J., of the Third Appellate District, sitting for O'CONNOR, C.J.

_____

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Heaven DiMartino, Assistant Prosecuting Attorney, for appellee state of Ohio.

Cheri B. Cunningham, Akron Director of Law, Michael J. Defibaugh, Assistant Director of Law, and Gertrude Wilms, City of Akron Chief Prosecuting Attorney, for appellee city of Akron.

Joann Sahl, for appellant.

Ron O'Brien, Franklin County Prosecuting Attorney, and Seth L. Gilbert, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Franklin County Prosecuting Attorney Ron O'Brien.

Jane P. Perry, urging reversal for amici curiae Advocates for Basic Legal Equality, Coalition on Homelessness and Housing in Ohio, Community Legal Aid Services, Disability Rights Ohio, Legal Aid Society of Southwest Ohio, Legal Aid of Western Ohio, Inc., Legal Aid Society of Cleveland, Legal Aid Society of Columbus, Office of the Ohio Public Defender, Ohio Justice and Policy Center, Ohio Poverty Law Center, and Southeast Ohio Legal Services.

_____