[Cite as *State v. Smith*, 2025-Ohio-1749.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240445 |
| | | TRIAL NOS. C/18/CRB/3639/A |
| Plaintiff-Appellee, | : | C/18/CRB/3639/B |
| vs. | : | |
| TYE SMITH, | : | *JUDGMENT ENTRY* |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

The judgments of the trial court are affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 5/16/2025 per order of the court.**

**By:**_____
        **Administrative Judge**

[Cite as *State v. Smith*, 2025-Ohio-1749.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240445 |
| | | TRIAL NOS. | C/18/CRB/3639/A |
| Plaintiff-Appellee, | : | | C/18/CRB/3639/B |
| vs. | : | | |
| TYE SMITH, | : | *O P I N I O N* | |
| Defendant-Appellant. | : | | |

Criminal Appeal From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: May 16, 2025

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *John D. Hill*, *Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**MOORE, Judge.**

**{¶1}** Defendant-appellant Tye Smith was an assistant city manager with the city of Forest Park, Ohio, and stood ready to accept a promotion to city manager. In January 2018, however, he was indicted for two counts of sexual imposition, third-degree misdemeanors, in violation of R.C. 2907.06(A)(1). The victims, N.B. and A.H., were related to Smith and the acts occurred when the victims were interns with the city under Smith's supervision. The charges led to Smith's termination.

**{¶2}** Smith pleaded guilty to two amended third-degree misdemeanor counts of unlawful restraint, in violation of R.C. 2905.03(A).

**{¶3}** In 2023, Smith submitted applications to have his convictions sealed or expunged. The court denied his applications. Smith now appeals the trial court's denial of his applications, arguing that the court based its judgments on the nature of the charged offenses and what he claims was the court's mistaken belief that the victims were minors. For the reasons below, the trial court's judgments are affirmed.

### I.    *Factual and Procedural History*

<u>Smith pleads to amended charges in 2018</u>

**{¶4}** At Smith's sentencing hearing, the State informed the court that N.B. and A.H. chose not to attend the hearing because they did not want to be exposed to, what they described as, Smith's "creepy behavior."  The State also explained N.B. and A.H. were amenable to the amended pleas because it would allow them to avoid having to testify in front of a jury and being subjected to cross-examination. At the hearing, the trial court explained that it considered Smith's sentencing memorandum, victim-impact statements, and the presentence report and assessments. A.H. and her mother submitted victim-impact statements. N.B. did not.

**{¶5}** Smith's sentencing memorandum highlighted his role as a father,

husband, and friend. Smith also emphasized his community involvement. He supported his assertions with letters from his wife, children, and other supporters.

{¶6} The trial court stated that the letters "paint[ed] a glowing portrait of the defendant as a respected member of our community, a family man . . . an upstanding citizen in all respects," but that "it [was] a stark contrast to what [Smith] did in these circumstances, and [it was] hard to square those . . . pictures." The court further noted that Smith expressed "very little concern for the victims of this case who -- young women who entrusted Mr. Smith and were under his supervision." It added that Smith was "the victim of no one" and characterized his behavior toward the victims as "shocking" and "despicable." The court stated that there was no excuse for Smith's behavior, which violated the trust of the victims, their families, and the community that he was tasked with serving as a government official.

{¶7} The court expressed concern that despite the letters, reports, and memorandum submitted, it did not "hear the words of Mr. Smith." The court also stated its apprehension that Smith would offend again based on Smith's failure to express concern for N.B. and A.H.

{¶8} In the case numbered C/18/CRB/3639/A, which involved N.B., the trial court sentenced Smith to 60 days in jail, suspended 29 days, and credited one day. The court also imposed three years of community control, $110 in costs, $500 in fines, and ordered Smith to serve 80 hours of community service and to stay away from N.B. In the case numbered C/18/CRB/3639/B, involving A.H., the court sentenced Smith to 60 days in jail with 60 days suspended, imposed three years of community control, $29 in costs, $500 in fines, and ordered him to serve 80 hours of community service and to stay away from A.H.

Smith files applications for record sealing and expungement.

**{¶9}**  In November 2023, Smith filed an application to have his record sealed and, two days later, he filed an application for expungement of the convictions ("Applications").

**{¶10}** In a January 2024 premotion hearing, the State requested a continuance to notify the victims and indicated that it would be filing a written response to Smith's applications.

*A.H.'s Objection*

**{¶11}**  A.H. emailed her objection to Smith's applications to the State. A.H. did not appear before the court, however, the State read her email into the record. A.H.'s objection expressed the emotional pain and suffering that she and N.B. suffered because of Smith's actions, and that she wished to pursue a restraining order against him because she feared seeing Smith again. The email stated that it was "mentally hard" for N.B. after recently seeing Smith in public. A.H. asserted that Smith had also harmed others who were afraid to come forward. She declared that Smith should not be permitted to work in human resources as a leader in government again and his record should be maintained because he should "live with the consequences of his actions." The State then made an oral objection to Smith's applications.

**{¶12}**  Smith told the court that a public defender was supposed to appear with him that day. Because there was no designation of counsel in the record, the trial court continued the matter so that Smith could obtain a public defender.

*Smith files a memorandum in support of his applications.*

**{¶13}** On March 18, 2024, the day before the scheduled hearing on the Applications, Smith filed a memorandum in support. He argued the Applications should be granted because the State had not filed an objection, and his convictions for

5

unlawful restraint, in which the victims were over the age of 13, were eligible for expungement under R.C. 2953.32(A)(1)(d). He asserted his continued engagement in counseling and community service after completing probation, having no pending criminal charges, and his "incredible influence" on his children as evidence of his rehabilitation.

**{¶14}** Smith characterized A.H.'s objection as "emotional" but "misguided." He noted that he was not convicted of sexual offenses, nor was he required to be on a sex-offender registry as A.H. claimed. He asserted that the original charges were reduced "likely due to their suspect nature." He referred to a letter he would be filing written by a family member of Smith and A.H., that would "expose" A.H.'s "reputation for dishonesty and falsehood" and A.H.'s attempt to get a different witness to corroborate her lie that Smith had perpetrated against other persons.

**{¶15}** Smith asserted that his interest in having his record expunged outweighed any legitimate government interest to the contrary because (1) A.H.'s allegations that Smith committed other crimes subjected him to investigation, (2) there was "no legitimate evidence to support the additional claims made by a person with a reputation for untruthfulness," (3) a grant of the expungements would allow for a "mechanism" for the police department to limit the records or work product it keeps regarding this matter, and (4) citing to *State v. A.S.*, 2022-Ohio-3833, ¶ 15 (1st Dist.), his applications cannot be denied solely based on the nature of the offense. He also discussed losing his position as an assistant city manager, which he had held for over 20 years, and the loss of the opportunity to be promoted to city manager. He also cited the fact that he had been unable to make the same living as before and was "forced to work as a private consultant in the HR field."

*The hearing is continued for the State to file a written objection.*

**{¶16}** During a hearing on the following day, the court noted that it received Smith's memorandum in support of the Applications. The State, having received the memorandum that morning, expressed concern that Smith was "essentially calling the victims liars" well after Smith had been convicted.

**{¶17}** The trial court noted the statute required the State's written objection to be filed 30 days prior to the original hearing, which was on January 9, 2024. In addressing defense counsel's objection to the court continuing the hearing for the State to file a written objection, the court noted that Smith waited nearly six years after the date of the offense to challenge the credibility of the witnesses, which created a change in circumstance. The court concluded, as Smith "filed at the 11th hour . . . a very different sort of memorandum than [the court] typically see[s] in an application for sealing or expungement," it would be appropriate to allow the State to file a written objection pursuant to the statute.

**{¶18}** In the State's written objection, filed April 3, 2024, it asserted the importance of maintaining the records for the public and any police officer who may have contact with Smith in the future. The State contended the letter from another family member submitted by Smith was irrelevant to the proceedings, and Smith's opportunity to challenge A.H.'s credibility passed after Smith pled guilty in 2018. The State, referring to A.H. and N.B. as minors, pointed to the fact that Smith was only attacking the credibility of one of the witnesses. Noting that there are various reasons that lead to plea bargains, the State asserted that Smith's contention that the pleas occurred due to the "suspect nature" of the cases was unreasonable. The State explained the sexual-imposition charges were not "reduced" to unlawful restraint; rather, they were amended to unlawful restraint while remaining third-degree

misdemeanor charges.

**{¶19}** The State asserted that Smith's records should not be sealed because, with respect to Smith's future employment and housing, Ohio citizens should be aware of the seriousness of the offenses he was convicted of. The State also argued that citizens cannot trust such a person to run a city human-resources department. The State added that an expungement is not a right guaranteed under the United States or Ohio Constitutions, rather an "act of grace" to be granted based on whether the applicant has been rehabilitated and the government's interest in maintaining the record does not outweigh the applicant's interest in having the record sealed or expunged.

*The hearing on Smith's applications.*

**{¶20}** During the April 2024 hearing, Smith explained his educational background and the impact of losing his position as an assistant city manager as well as his opportunity for promotion in 2018 due to the sexual-imposition charges. Smith stated that he had only been able to obtain part-time employment because of his convictions for unlawful restraint, which affected his ability to provide for his family and eventually retire.

**{¶21}** Counsel for Smith explained that Smith has been "significantly rehabilitated," as shown by his completion of probation, continued engagement in counseling and community volunteer activities postprobation and having no new criminal charges. Counsel argued that the State's position that the public deserves to know about the nature of the offenses is not a significant State interest because Smith was not convicted of the sexual offenses charged.

**{¶22}** The State responded by explaining that one of the victims, A.H., "vehemently" objected to the sealing, and that there was no constitutional right to an

8

expungement. The State also argued that its interest in maintaining Smith's record outweighed Smith's interest in having his convictions sealed or expunged. The State asserted that the case cited by Smith in support of his applications, *State v. A.S.*, 2022-Ohio-3833, ¶ 15, was distinguishable from Smith's case because Smith was not seeking expungement of a theft conviction.

*The trial court denies Smith's applications.*

**{¶23}** In July 2024, the trial court made three entries overruling Smith's applications for record sealing and expungement. The court acknowledged that Smith's convictions were eligible for consideration for sealing and expungement as the applicable waiting period had passed, and Smith had no pending criminal charges.

**{¶24}** Regarding whether Smith demonstrated rehabilitation that was satisfactory to the court under R.C. 2953.32(D)(1)(c), the entry noted that community control was extended to provide Smith with additional time to complete counseling, after which Smith was released from community control.

**{¶25}** The entry noted that Smith was represented by counsel during plea negotiations, pleaded guilty, was not incarcerated, and "[a]t no prior point to this did [Smith] challenge the character or the veracity of either victim." The court determined that the family member's letter that Smith offered stated that the family member possessed information to undermine the credibility of one of the victims but offered no firsthand knowledge of the facts of Smith's case—to which Smith had pleaded guilty—or an explanation for the distinction or relevance of the information he allegedly possessed.

**{¶26}** The court's entry further reflected that Smith was not remorseful for his actions and expressed no concern for the victims, "who were minors at the time [Smith] committed these offenses." The court concluded that Smith was only

concerned with himself and his professional interests; his in-court statements and those contained in his memorandum in support of his applications were "entirely self-serving and demonstrate[d] no regard for the victims or the public Mr. Smith was supposed to be serving at the time of these offenses." The entry concluded that the court was not satisfied that Smith had been sufficiently rehabilitated to the degree to justify sealing or expunging Smith's convictions.

{¶27} The entry then discussed whether Smith's interest in having his record sealed or expunged outweighed the legitimate interest of the government in maintaining the records under R.C. 2953.32(D)(1)(f). The entry explained that Smith's stated interest was professional in nature as he sought to return to his prior career in public administration while the State and A.H.'s articulated interest in maintaining the records was so prospective employers were put on notice that Smith had committed these acts in the course of his employment as an assistant city manager. The court determined that the government interest in preserving public safety, as well as the victims' interest in maintaining the crimes committed against them, "vastly outweigh[ed]" Smith's professional interests.

{¶28} This appeal followed.

## II.   Analysis

### The trial court did not abuse its discretion by denying Smith's applications.

{¶29} This court reviews a trial court's decision to deny an application for criminal-record sealing for an abuse of discretion. *State v. Lanxiang Yu*, 2024-Ohio-3083, ¶ 8 (1st Dist.). A trial court abuses its discretion when "[it] exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Id*. An abuse of discretion is more than an error of law or judgment; it

implies that the attitude of the trial court was "unreasonable, arbitrary or unconscionable." *State v. Ofori*, 2023-Ohio-1460, ¶ 14 (1st Dist.), quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "[A]n abuse of discretion occurs when a trial court's judgment does not comport with reason or the record." *Id.*, quoting *State v. R.S.*, 2022-Ohio-1108, ¶ 8 (1st Dist.).

**{¶30}** Expungement is an entirely separate process governed by R.C. 2953.37(A)(1), "which results in deletion, making all case records 'permanently irretrievable.'" *State v. R.S.*, 2022-Ohio-1108, ¶ 9 (1st Dist.), quoting *State v. Aguirre*, 2014-Ohio-4603, ¶ 36, fn. 2. In contrast, sealing records under R.C. 2953.32 "simply provides a shield from the public's gaze [and limits] inspection of sealed records of conviction to certain persons for certain purposes." *Id.* A trial court must assess seven factors under R.C. 2953.32(D)(1) before granting an application for record sealing or expungement. Although a trial court's judgment cannot be based on the nature of the crime alone, a trial court may consider the gravity of the crime in making its determination. *See State v. Dewey*, 2021-Ohio-1005, ¶ 14-15 (11th Dist.). Because the sealing or expungement of records of conviction is a privilege, not a right, it can be granted only when all seven requirements for eligibility are met. *State v. Sager*, 2019-Ohio-135, ¶ 9 (1st Dist.); *State v. Boykin*, 2013-Ohio-4582, ¶ 11.

**{¶31}** As found by the trial court, the amended offenses of unlawful restraint which Smith pleaded guilty to were eligible to be considered for sealing or expungement under R.C. 2953.32(D)(1)(a). Also, pursuant to R.C. 2953.32(D)(1)(b), the trial court found that Smith had no pending criminal charges against him. While Smith meets the first two factors, the other five factors remain at issue.

<u>Smith failed to show that he had been rehabilitated to the satisfaction of the court
under R.C. 2953.32(D)(1)(c).[1]</u>

**{¶32}** Evidence of rehabilitation normally consists of an admission of guilt
and a promise to never commit a similar offense in the future, or good character or
citizenship in the community since the conviction. *State v. Evans*, 2013-Ohio-3891, ¶
11 (10th Dist.). The issue of rehabilitation is peculiarly subjective, requiring great
deference to the trial court on the part of a reviewing court. *State v. Brooks*, 2012-
Ohio-3278, ¶ 15 (2d Dist.).

**{¶33}** Smith cites to *State v. A.S.*, 2022-Ohio-3833, ¶ 10 (1st Dist.), in regard
to the trial court's concerns that Smith's statements were "self-serving," but fails to
develop this argument other than quoting *A.S.* for the proposition that "R.C. 2953.32
provides persons with qualifying offenses who have demonstrated rehabilitation with
a second chance, so that they can avoid these collateral consequences of a criminal
record and the associated obstacles to becoming a thriving and productive member of
society." Smith also quotes *Evans* at ¶ 11, for the proposition that he is supposed to
make self-serving statements.

**{¶34}** While it is certainly expected that an applicant highlights the positive
attributes in his life, showing remorse for the damage caused to a victim is significant
in these proceedings.

**{¶35}** Nothing in the record suggests that Smith is remorseful for the actions
that brought about the initial sexual-imposition charges. *Contra State v. Hilbert*, 145
Ohio App.3d 824 (8th Dist. 2001) (appellant told the judge, "Your honor, what I did

---

[1] Smith argues that the trial court denied his applications in part based on its conclusion that the
victims were minors at the time of the offenses. Other than the State's comments and the trial
court's entry stating the victims were minors, nothing in the record supports this. Still, whether
A.H. and N.B. were minors would not change the outcome where all the factors in R.C.
2953.32(D)(1) are not met.

was stupid and what I did was wrong, and I know that."); *see State v. J.L.*, 2019-Ohio-681 (10th Dist.) (appellant failed to meet his burden to demonstrate his rehabilitation where he did not fully accept responsibility for committing the offense even though he had pleaded guilty to it).

{¶36} The trial court found that Smith had demonstrated his commitment to counseling, community service, his family, and his career. Although Smith stressed that he was not convicted of sexual imposition, there is no indication in the record that the facts were amended in addition to the charges; he pleaded guilty to amended charges that contained the same underlying facts. Yet, Smith failed to express any remorse for his actions; his written memorandum and statements to the trial court were devoid of a promise that he would never commit a similar offense in the future, which brings into question his claim that he has been rehabilitated.

{¶37} Although Smith pleaded guilty to the amended charges, the trial court was permitted to make its determination based on the gravity of the cases. The court expressed concern for Smith's lack of empathy or remorse for the impact his actions had on the victims. Not helpful to his cause was the fact that Smith besmirched the credibility of one of the victims in response to her objection to his applications and referred to the nature of the original charges as "suspect." Smith never raised these credibility concerns prior to agreeing to plead, and he never raised any such concern over the five years between his pleas and when he filed the Applications. Additionally, Smith's assertions against A.H. did not address the allegations related to N.B., the victim in the first count of unlawful restraint.

{¶38} Therefore, where the court found that Smith failed to demonstrate remorse for his actions and concern for the victims, the trial court did not abuse its discretion in finding that Smith was not sufficiently rehabilitated.

The State's objection

**{¶39}** The trial court must consider the State's reasons against granting the applications if it has filed an objection in accordance with R.C. 2953.32(C). R.C. 2953.32(D)(1)(d). R.C. 2953.32(C) provides that a prosecutor may object to the granting of the application by filing a written objection with the court not later than 30 days prior to the date set for the hearing.

**{¶40}** Smith asserts that his applications should have been granted because the State did not file a written objection. First, the trial court permitted the State to file a written objection. Second, R.C. 2953.32(C)[2] does not require the filing of a written objection by the State; rather, as an alternative to appearing at the expungement hearing, the statute permits a prosecutor to contest an expungement by written objection. *State v. Hamilton*, 75 Ohio St.3d 636, 637 (1996). Finally, a prosecutor's participation in a hearing on an application to seal the record of a conviction is not limited to issues specified by the prosecutor in a written objection filed pursuant to R.C. 2953.32(C). *Id.* at 641. Here, the State made an oral objection in February 2024, filed a written objection, and appeared at the hearing. Even if the State's written objection was erroneously considered, the State appeared at the hearing to present its arguments against Smith's applications. The trial court did not abuse its discretion in considering those arguments.

The victim's objection and consideration of the victim's statements

**{¶41}** R.C. 2953.32(D)(1)(e) provides that, if a victim objected, the trial court must consider the reasons against granting the application specified by the victim in

---

[2] *State v. Hamilton*, 75 Ohio St.3d 636 (1996), cites to R.C. 2953.32(B), which was revised to R.C. 2953.32(C) in March 2025. While the 2014 version of the statute was expanded in the current version, both versions state, in pertinent part, "The prosecutor may object to the granting of the application by filing a written objection with the court not later than thirty days prior to the date set for the hearing."

the objection pursuant to the Ohio Constitution. This section coincides with R.C. 2953.32(D)(1)(g), which requires the trial court to consider the oral or written statement of any victim, victim's representative, and victim's attorney, if applicable.

**{¶42}** One of the victims, A.H., strenuously objected to the grant of Smith's applications. The statements contained in A.H.'s email, which was submitted to the court as an exhibit, evinces her reasons against the grant of Smith's applications. A.H.'s objection expressed that, among other things, she continues to suffer emotional and physical damage from Smith's actions, is fearful of being in Smith's presence, N.B. saw him in public and "mentally it was hard for her to deal with," and she does not believe that Smith should ever be able to hold a position in leadership, human resources, or as a public official.

**{¶43}** The trial court apparently gave significant consideration to the statements made in the victim's written objections pursuant to R.C. 2953.32(D)(1)(g), which is well within the trial court's discretion.

The weight of Smith's interest against the State's interest to maintain the records

**{¶44}** R.C. 2953.32(D)(1)(f) requires the trial court to weigh the interests of an applicant in having the records pertaining to his or her conviction sealed or expunged against the legitimate needs, if any, of the government to maintain those records. Where Smith sought to obtain another position as a public official, the trial court's finding that the State and A.H.'s concern that Smith would again use his position to victimize another person, or that any prospective employer for a human resources or public-official position should be put on notice of Smith's actions when he held an assistant city manager position, was a legitimate interest in maintaining the records.

**{¶45}** The statements A.H. made in her objection essentially bolstered the State's argument that its interest in maintaining records of Smith's convictions

outweighed Smith's interest in returning to his previous career. Accordingly, the trial court's denial of Smith's applications was not unreasonable, arbitrary, or unconscionable.

**{¶46}** We overrule Smith's sole assignment of error.

### III.    Conclusion

**{¶47}** While Smith contends the trial court erred by finding that he had not been satisfactorily rehabilitated, he fails to recognize that failure to meet even one factor under R.C. 2953.32(D)(1) prevents his applications from being granted. Accordingly, the trial court did not abuse its discretion in denying Smith's applications. We affirm the trial court's judgments.

Judgments affirmed.

**CROUSE, P.J.,** and **BOCK, J.,** concur.