[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Radcliff,* Slip Opinion No. 2015-Ohio-235.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-235

THE STATE OF OHIO, APPELLEE, *v.* RADCLIFF, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Radcliff,* Slip Opinion No. 2015-Ohio-235.]

*Pardons—Sealing of criminal records denied for crime for which offender has been pardoned—R.C. 2953.32 and 2953.52.*

(Nos. 2012-1985 and 2013-0004—Submitted June 24, 2014—Decided January 28, 2015.)

APPEAL from and CERTIFIED by the Court of Appeals for Franklin County, No. 11AP-652, 2012-Ohio-4732.

_____

O'CONNOR, C.J.

{¶ 1} In this appeal, we answer questions that were not addressed in our recent decision in *State v. Boykin*, 138 Ohio St.3d 97, 2013-Ohio-4582, 4 N.E.3d 980, which held that "[a] gubernatorial pardon does not automatically entitle the recipient to have the record of the pardoned conviction sealed.*" Id.* at syllabus.

{¶ 2} We are presented with a certified conflict between the decision of the Tenth District Court of Appeals in this case and a prior decision of the First District Court of Appeals, *State v. Cope*, 111 Ohio App.3d 309, 676 N.E.2d 141

(1st Dist.1996). The conflict question asks, "May a trial court exercise jurisdiction to seal the record of a pardoned conviction where the petitioner has other offenses on his record?"

{¶ 3} And in a discretionary appeal that we consolidated with the certified conflict, we are presented with a proposition of law that states, "A trial court has the inherent authority to seal the records of a conviction, which has been erased by a pardon from the governor, in order to give effect to an important constitutional provision." 134 Ohio St.3d 1466, 2013-Ohio-553, 983 N.E.2d 367.

{¶ 4} We answer the certified question in the negative, reject the holding in *Cope*, and overrule the proposition of law. We therefore affirm the judgment of the Tenth District Court of Appeals.

## RELEVANT BACKGROUND

{¶ 5} On January 7, 2011, Governor Ted Strickland, acting under the authority conferred on him by Article III, Section 11, of the Ohio Constitution, granted a "full and unconditional pardon" to appellant, James Radcliff. That pardon extended to five convictions that occurred in several counties approximately 30 years ago, including a 1982 felony conviction in Franklin County for breaking and entering a donut shop while possessing a screwdriver.

{¶ 6} On February 28, 2011, Radcliff applied to the Franklin County Common Pleas Court for an order sealing his conviction in that forum. Appellee, the state of Ohio, opposed his application, arguing that Radcliff was ineligible to have his record sealed under the statutory framework of R.C. 2953.32 because he had at least seven convictions and therefore was not a "first offender" within the meaning of the statute. The state also argued that the court lacked the inherent authority to seal the record under *Pepper Pike v. Doe*, 66 Ohio St.2d 374, 421 N.E.2d 1303 (1981).

{¶ 7} After conducting a hearing, the trial court granted Radcliff's application to seal. In its resulting order, the trial court stated that it was acting

"[i]n accordance with" R.C. 2953.32 and that the sealing of Radcliff's record was "consistent with the public interest."

{¶ 8} The state appealed to the Tenth District Court of Appeals. The appellate court reversed.

{¶ 9} The appellate court recognized that although the trial court had cited R.C. 2953.32 in its order granting the motion to seal, no statute authorized the sealing of Radcliff's record based on a gubernatorial pardon. And the appellate court specifically noted that Radcliff had acknowledged that the statutory scheme did not entitle him to have his record sealed and instead asked the court to seal the Franklin County record solely because the governor had issued a pardon for those crimes. *State v. Radcliff,* 2012-Ohio-4732, 978 N.E.2d 1275, at ¶ 9 and 10.

{¶ 10} The appellate court turned to our decision in *Pepper Pike*, which held that a court may seal criminal records after applying a balancing test that "weighs the privacy interest of the defendant against the government's legitimate need to maintain records of criminal proceedings" and "where such unusual and exceptional circumstances make it appropriate to exercise jurisdiction." *Pepper Pike* at paragraph two of the syllabus. But as the appellate court recognized, at the time we decided *Pepper Pike*, the General Assembly had not yet enacted R.C. 2953.52. *Radcliff* at ¶ 12.

{¶ 11} The appellate court held that the vitality of *Pepper Pike* had been limited by subsequent case law that applied *Pepper Pike* only in cases in which the defendant had not been convicted of a crime. *Id.* at ¶ 51. After an extensive review of this court's precedent on gubernatorial pardons, the United States Supreme Court's decisions on presidential pardons, and the decisions of its sister appellate courts, the appellate court ultimately concluded that "a pardon neither erases the conviction nor renders the pardon recipient innocent as if the crime were never committed." *Id.* It concluded that Radcliff was not eligible for

judicial "expungement"[1] or other statutory relief, and it therefore vacated the trial court's decision and remanded the cause with instructions to deny Radcliff's application to seal. In so doing, however, the appellate court characterized its decision as "a particularly difficult one to reach, knowing today's technologically based society makes the harm perpetrated through a public criminal record accessible to virtually everyone." *Id*. at ¶ 53. It further noted that Radcliff had made an "impressive turn-around" and was "deserving of a fresh start." *Id*. at ¶ 54.

{¶ 12} Subsequently, the Tenth District certified its decision as in conflict with *State v. Cope,* 111 Ohio App.3d 309, 676 N.E.2d 141 (1st Dist.1996). In *Cope*, the First District held that "a trial court may exercise its jurisdiction to seal the record of a conviction which has been erased by a pardon, regardless of whether the petitioner has other offenses on his record." *Id.* at 312.

{¶ 13} We recognized the conflict, accepted Radcliff's discretionary appeal, and consolidated the causes. 134 Ohio St.3d 1466, 2013-Ohio-553, 983 N.E.2d 367. For the reasons that follow, we resolve the interdistrict conflict by rejecting *Cope*, and we reject the proposition of law presented in Radcliff's discretionary appeal. We therefore affirm the decision of the Tenth District Court of Appeals.

---

[1] We recently explained the term "expungement" in *State v. Aguirre*, ___ Ohio St.3d ___, 2014-Ohio-4603, ___ N.E.3d ___, ¶ 5, fn. 2:

> Though the Tenth District repeatedly referred to the process at issue in this case as "expungement," we note that expungement is a separate process from sealing a conviction record. Expungement results in deletion, making all case records "permanently irretrievable," R.C. 2953.37(A)(1), while sealing simply provides a shield from the public's gaze. R.C. 2953.32(D), restricting inspection of sealed records of conviction to certain persons for certain purposes. We use the term "expungement" in this opinion only where it appears in quoted material.

*See also State v. Pariag*, 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 11 and fn. 1.

ANALYSIS

{¶ 14} The appellate court found that the record in this case suggests that Radcliff deserves redemption. But if he is to have that redemption, it must come from the General Assembly.

### *The Sealing of a Record Is a Privilege*
### *That Flows Primarily from the Legislature*

{¶ 15} Our analysis is driven initially by what we have held previously: "the sealing of a criminal record is a ' "privilege, not a right." ' " *State ex rel. Cincinnati Enquirer v. Lyons*, 140 Ohio St.3d 7, 2014-Ohio-2354, 14 N.E.3d 989, ¶ 15, quoting *State v. Boykin*, 138 Ohio St.3d 97, 2013-Ohio-4582, 4 N.E.3d 980, ¶ 11, quoting *State v. Futrall*, 123 Ohio St.3d 498, 2009-Ohio-5590, 918 N.E.2d 497, ¶ 6. *Accord State v. Simon*, 87 Ohio St.3d 531, 533, 721 N.E.2d 1041 (2000); *State v. Hamilton*, 75 Ohio St.3d 636, 639-640, 665 N.E.2d 669 (1996). Sealing a criminal record at the request of the offender is an " 'act of grace created by the state.' " *Boykin* at ¶ 11, quoting *Hamilton* at 639. Accordingly, a court may seal an offender's conviction record "only when all requirements for eligibility are met." *Id.*, citing *Futrall* at ¶ 6.

{¶ 16} The authority to seal or expunge a criminal record comes from two sources.

{¶ 17} In the usual course, the legislature determines the eligibility for sealing a record. The General Assembly has done so through R.C. 2953.32 and 2953.52, which reflect Ohio's public policy on sealing records. As the Tenth District recognized, Ohio's statutes do not provide Radcliff with authority to secure the sealing of his record, notwithstanding Governor Strickland's pardon:

> R.C. 2953.52(A) permits any person who has been found not guilty by a jury, who is the defendant named in a dismissed indictment, or against whom the Grand Jury enters a no bill, to

apply to the court for an order sealing the official records of the case. R.C. 2953.32(A)(1) permits a first offender to apply to the sentencing court for an order sealing the record of conviction. A first offender is "anyone who has been convicted of an offense in this state or any other jurisdiction and who previously or subsequently has not been convicted of the same or a different offense in this state or any other jurisdiction." R.C. 2953.31(A).

Under either section, the court must determine if the prosecutor filed an objection to the application and, if so, consider the prosecutor's reasons for the objection. R.C. 2953.32(B); R.C. 2953.52(B); *Koehler* [*v. State*, 10th Dist. Franklin No. 07AP-213, 2008-Ohio-3472] at ¶ 13. The court also must weigh the applicant's interests in having the records sealed against the legitimate needs, if any, of the government to maintain the records. R.C. 2953.32(C)(1); R.C. 2953.52(B)(2)(d). If the applicant fails to satisfy any one of the statutory requirements, the court must deny the application. *Id*. at ¶ 13, citing *State v. Krantz,* 8th Dist. No. 82439, 2003-Ohio- 4568, ¶ 23. None of the applicable statutes permits a defendant to seek expungement after obtaining a gubernatorial pardon, and defendant acknowledges he is not entitled to expungement under either statutory provision.

*Radcliff*, 2012-Ohio-4732, 978 N.E.2d 1275, at ¶ 8-9. *See also Boykin* at ¶ 17 ("Neither R.C. 2953.32 nor R.C. 2953.52 currently provides that a gubernatorial pardon automatically entitles the recipient to have the records of the conviction sealed. In fact, the word 'pardon' does not appear in either of those statutes").

{¶ 18} Instead of the statutory authority to seal his record, Radcliff relies on what he asserts is the judiciary's inherent authority to seal records. We

recognized the judiciary's authority to seal certain criminal records in *Pepper Pike v. Doe*, 66 Ohio St.2d 374, 421 N.E.2d 1303.

{¶ 19} In *Pepper Pike,* we held that the constitutional right to privacy recognized by the United States Supreme Court in cases like *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), could provide a basis for sealing and expunging criminal records in the absence of statutory authority. *Id.* at 377. Based on that right, we agreed that a municipal court had the authority to seal the record of an applicant who had been charged criminally with assault but subsequently had that charge dismissed with prejudice. We directed that trial courts should use a balancing test in determining whether to seal; the balancing test "weighs the interest of the accused in his good name and right to be free from unwarranted punishment against the legitimate need of the government to maintain records." *Id*.

{¶ 20} But in recognizing the authority of the municipal court to seal the record in *Pepper Pike*, we noted that it was "clear from the context and history of the matter that appellant's former husband and current wife used the courts as a vindictive tool to harass appellant." *Id*. We found that the facts giving rise to *Pepper Pike* were "such unusual and exceptional circumstances" that it was appropriate for the trial court to exercise its jurisdiction "to expunge and seal all records in the case." *Id*. Our holding was limited, and driven by two considerations: the unique facts of that case and the absence of legislative guidance.

{¶ 21} We cautioned that *Pepper Pike* was "the exceptional case" and that the decision "should not be construed to be a carte blanche for every defendant acquitted of criminal charges in Ohio courts." *Id*. Instead, it remained the norm for courts to lack the discretion to seal criminal records because "[t]ypically, the public interest in retaining records of criminal proceedings, and making them

available for legitimate purposes, outweighs any privacy interest the defendant may assert." *Id.*

**{¶ 22}** Significantly, at the time we decided *Pepper Pike*, the General Assembly had not enacted a statute to address the situation with which we were then presented, i.e., a defendant acquitted of charges brought purely to harass and vex her. In 1981, the only statute for sealing records was R.C. 2953.32, which "extended the remedy to first offenders, but was silent as to those who had been prosecuted but not convicted." Sellers, *Sealed with an Acquittal: When Not Guilty Means Never Having to Say You Were Tried,* 32 Cap.U.L.Rev. 1, 3 (2003).

**{¶ 23}** It was not until three years after *Pepper Pike* that the General Assembly enacted R.C. 2953.52, which now governs the sealing of the records of acquitted defendants. Am.Sub.H.B. No. 227, 140 Ohio Laws, Part 1, 2382, 2387-2388; *see also* Sellers at 3. By enacting R.C. 2953.32, the legislature "closed the gap" in the statutory scheme for sealing and expunging criminal records. *Boykin,* 138 Ohio St.3d 97, 2013-Ohio-4582, 4 N.E.3d 980, at ¶ 16.

**{¶ 24}** R.C. 2953.52 now provides relief that was not in existence in 1981 when we decided *Pepper Pike.* Essentially, R.C. 2953.52 codifies the balancing test we created in *Pepper Pike.* "Like the procedure established in R.C. 2953.32, the court is required to weigh the applicant's interests in having the records sealed against the legitimate needs, if any, of the government to maintain the records. R.C. 2953.52(B)(2)(d); *see* R.C. 2953.32(C)(1)(e)." *Boykin* at ¶ 16.

**{¶ 25}** When the General Assembly enacted R.C. 2953.52, it was certainly aware of the power of the pardon. And it was within its purview to incorporate statutory provisions that required, or permitted, recipients of gubernatorial pardon to be eligible to have their records sealed. But the General Assembly did not do so, and we must presume that its omission of pardoned defendants was intentional. *Madjorous v. State*, 113 Ohio St. 427, 433, 149 N.E. 393 (1925) ("The Ohio Legislature having dealt with the subject, and having

made certain provisions and certain exceptions thereto, it will be presumed that the Legislature has exhausted the legislative intent, and that it has not intended the practice to be extended further than the plain import of the statutes already enacted"). That omission is important here.

### *The Judiciary's Inherent Authority to Order Sealing of a Record Is Subservient to the Legislature's Authority*

{¶ 26} When we relied upon our own, extrastatutory authority to permit sealing in *Pepper Pike*, we did so because of the importance of the constitutional right to privacy and the lack of any statutory remedy for the person pleading for sealing, who had not been convicted of any crime. *See State v. Weber*, 19 Ohio App.3d 214, 216, 484 N.E.2d 207 (1st Dist.1984). *Accord Sealed Appellant v. Sealed Appellee*, 130 F.3d 695, 698-699 (5th Cir.1997) (noting that a court's inherent power to seal is equitable in nature but limited to cases in which "no other remedy existed to vindicate important legal rights," such as *United States v. McLeod,* 385 F.2d 734, 750 (5th Cir.1967), in which the court used its inherent power to expunge the records of African-Americans who had been arrested to prevent them from voting). As the Twelfth District has explained, *Pepper Pike* "was directed toward the inequity that results from application of R.C. 2953.32, which addresses expungement of the criminal record of convicted first offenders, but fails to address those who are charged but not convicted." *State v. Winkelman*, 2 Ohio App.3d 465, 468, 442 N.E.2d 811 (12th Dist.1981), *overruled on other grounds*, *State v. Frederick*, 12th Dist. Butler Nos. CA88-07-11 and CA08-07-118, 1998 WL 80493 (July 17, 1989).

{¶ 27} But neither the rule of *Pepper Pike* nor its rationale has vitality when the offender has been convicted and is not a first-time offender. " 'While it is true that a trial court has inherent power to order an expungement absent statutory authority, it is a limited power.' " *State v. Bailey,* 10th Dist. Franklin No. 02AP-406, 2002-Ohio-6740, quoting *State v. Wilfong*, 2d Dist. Clark No.

2000-CA-75, 2001 WL 256326 (Mar. 16, 2001). Although the judicial power to seal criminal records still exists, "it is limited to cases where the accused has been acquitted or exonerated in some way and protection of the accused's privacy interest is paramount to prevent injustice." *State v. Chiaverini,* 6th Dist. Lucas No. L-00-1306, 2001 WL 256104, *2 (Mar. 16, 2001), citing *In Re Application to Seal Record of No Bill*, 131 Ohio App.3d 399, 404 (3d Dist.1999), quoting *State v. Stadler,* 14 Ohio App.3d 10, 11, 469 N.E.2d 911 (9th Dist.1983) (" 'It is not enough merely for defendant to have been acquitted. Judicial expungement is an exceptional remedy to be employed where the equities of the situation demand it' ").

{¶ 28} Since our decision in *Pepper Pike* was rendered, a host of Ohio's appellate courts have similarly and consistently recognized the limitation on a court's inherent authority to act in this area of the law. *See, e.g., State v. Bailey,* 10th Dist. Franklin No. 02AP-406, 2002-Ohio-6740, 2002 WL 31750242; *State v. Brasch*, 118 Ohio App.3d 659, 663, 693 N.E.2d 1134 (12th Dist.1997); *State v. Netter*, 64 Ohio App.3d 322, 325-326, 581 N.E.2d 597 (4th Dist.1989); *State v. Moore*, 31 Ohio App.3d 225, 227, 510 N.E.2d 825 (8th Dist.1986); *State v. Stadler*, 14 Ohio App.3d 10, 11, 469 N.E.2d 911 (9th Dist.1983). We agree that *Pepper Pike* is "simply inapposite" to cases involving convicted offenders, even if they have been pardoned. *Weber*, 19 Ohio App.3d at 218, 484 N.E.2d 207.

{¶ 29} In reaching our conclusion, we are mindful that the law of pardons implicates a delicate balance of power among the three branches of government. The Ohio Constitution contemplates that the executive branch will have the primary authority to pardon, but reserves certain record-keeping rights to the legislative branch. *See* Article III, Section 11, of the Ohio Constitution. The constitutional scheme demands our fidelity to the separation-of-powers doctrine and militates strongly against judicial intervention in this area.

{¶ 30} By its plain wording, Article III, Section 11, of the Ohio Constitution provides that the governor "shall have power, after conviction, to grant reprieves, commutations, and pardons, for all crimes and offenses, except treason and cases of impeachment, upon such conditions as the governor may think proper." The courts have no power of judicial review of the governor's discretion to pardon. *Knapp v. Thomas*, 39 Ohio St. 377, 392 (1883).

{¶ 31} The constitution permits the General Assembly some power in the area of pardons. Although the legislature lacks any authority to create substantive regulations that limit the governor's power to pardon, it is empowered to impose procedural prerequisites to the application process for pardons. *State ex rel. Mauer v. Sheward*, 71 Ohio St.3d 513, 519-520, 644 N.E.2d 369 (1994). And the Ohio Constitution requires the governor to communicate to the General Assembly at each session regarding any pardon, reprieve, and commutation the governor issues and the reasons for the pardon. Article III, Section 11, Ohio Constitution. "In other words, the Constitution contemplates that a record of the conviction and the pardon will be maintained. The governor must report the name of the offender, the offense, the sentence, and the reasons for the pardon to the General Assembly." *Boykin,* 138 Ohio St.3d 97, 2013-Ohio-4582, 4 N.E.3d 980, at ¶ 32. Thus, the constitution contemplates that the legislature has some authority in maintaining the records of any pardons granted by the governor. And the legislature has acted on that authority not only by requiring that certain records of pardons be maintained, but also by not permitting those records to be sealed.

{¶ 32} For example, R.C. 2967.06 requires that pardons and commutations be issued in triplicate: one to be given to the offender, "one to be filed with the clerk of the court of common pleas in whose office the sentence is recorded," and one to be filed with the correctional institute where the offender is confined, if any. The fact that the General Assembly has required that a record of a defendant's pardon be filed in the same court where the pardoned offense was

originally adjudicated expresses the General Assembly's intent that courts must preserve the record of a pardon, not conceal it. Indeed, in the years since *Pepper Pike*, the General Assembly has enacted, amended, and repealed statutes that govern sealing and expunging criminal records. *See, e.g.*, R.C. 2953.32 and 2953.42. Despite the General Assembly's repeated returns to the subject of criminal record-sealing, it has never shown, or even suggested, any intent to extend this remedy to an offender who has been pardoned.

{¶ 33} Given the importance placed on record preservation in the statutory scheme governing pardons, we should not intrude on the record-keeping rules provided by the General Assembly. Just as the courts must jealously protect the judicial power against encroachment by the executive and legislative branches, *see, e.g.*, *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 116-118, citing *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 462, 467, 715 N.E.2d 1062 (1999), we also must protect the power and constitutional authority of the executive and legislative branches from improper interference by the judiciary. The power of the pardon lies in the executive branch, and the power to require retention of records of the crime from which the pardon arose lies primarily in the legislative branch. Notwithstanding the fact that courts have both statutory and extrastatutory authority to seal criminal records, the judicial branch should restrain its power to act in this area.

{¶ 34} That said, we are not unmindful that Radcliff has been pardoned for his crimes. And he may, as the appellate court suggested, be deserving of the opportunity to continue to be a productive, law-abiding member of society without the badges and incidents of his conviction. In that regard, he is not alone.

{¶ 35} For over 15 years, Ohio's courts have noted their frustration with the limits of the current statutory scheme for sealing convicted offenders' records. The court in *Brasch*, as it reluctantly followed the law that forbids the courts to

seal a record of a defendant who is deserving of having it sealed but ineligible for that remedy because of a prior conviction, expressed its frustration as follows:

As stated earlier in this opinion, however, the equities in this case weigh heavily in appellant's favor. The record is replete with evidence of appellant's remarkable achievements both in his personal and professional life. Appellant has more than demonstrated that he is deserving of a fresh start. Unfortunately, state law precludes us from equitable consideration if a prior conviction has been demonstrated.

The frustration of the courts in situations such as this one was noted in a recent case before the First District Court of Appeals, where Judge Marianna Brown Bettman expressed the hope that "the legislature will consider amending the expungement statute to give our trial judges discretion in the granting of expungements. * * * [C]ertain defendants who do not technically meet the present definition of first offenders would clearly benefit from the statute's remedial purpose, and our trial judges, who are in the best position to make this decision, are handcuffed by the present law.

"In *Barker v. State* (1980), 62 Ohio St.2d 35, 41, 16 O.O.3d 22, 25-26, 402 N.E.2d 550, 554-555, the Ohio Supreme Court wrote that the purpose of the expungement statute 'is to provide remedial relief to qualified offenders in order to facilitate the prompt transition of these individuals into meaningful and productive roles.' * * * That purpose * * * is to encourage those who have committed crimes, who have been appropriately punished, and who have been properly rehabilitated to get on with

their lives. Nowhere, perhaps, is this more important than in getting and keeping a job. We want to encourage all of our citizens to have productive employment.

"* * * [O]ur trial judges are unable to effectuate these goals under the present statute." *State v. Coleman* (1997), 117 Ohio App.3d 726, 729, 691 N.E.2d 369, 370-371 (Bettman, P.J., concurring).

We must reluctantly overrule appellant's first assignment of error.

*Brasch*, 118 Ohio App.3d at 664-665, 693 N.E.2d 1134.

{¶ 36} Despite any frustrations judges may have with their inability to do justice in any given case of a pardoned offender, judges must respect that it is the role of the legislature to address the statutory scheme on sealing records, even in cases in which gubernatorial pardons are granted. Until the General Assembly acts, we are left with the understanding that a pardon provides only forgiveness, not forgetfulness. *State v. Skinner*, 632 A.2d 82, 84 (Del.1993), citing *Stone v. Oklahoma Real Estate Comm.,* 369 P.2d 642 (Okla.1962). The pardon does not wipe the slate clean. *Id.* If the slate is to be wiped clean for those pardoned of crimes, including Radcliff, the General Assembly must act. The Mississippi Supreme Court recently agreed:

Expungement from official records all records relating to an arrest, indictment, trial, and finding of guilt, in order to restore one to the status occupied prior thereto, is an altruistic objective for the legislative branch to contemplate and prescribe.

*Polk v. State*, ___ So.3d ___, 2014 WL 5035942, *3 (Miss.2014). *See also Aguirre*, ___ Ohio St.3d ___, 2014-Ohio-4603, ___ N.E.3d ___, at ¶ 25 ("As the General Assembly has demonstrated through its statutory framework, it is clearly aware of these issues and is capable of enunciating its determination of which of the competing interests implicated here are best served by sealing a conviction record and at what point sealing shall be permitted").

## CONCLUSION

{¶ 37} We hold that a court lacks the authority to seal a criminal record of a pardoned offender who does not meet applicable statutory requirements for sealing the record. Accordingly, we answer the certified question in the negative, reject the proposition of law presented in the discretionary appeal, and affirm the Tenth District's judgment in this cause.

Judgment affirmed.

O'DONNELL, KENNEDY, and FRENCH, concur.

PFEIFER, LANZINGER, and O'NEILL, JJ., dissent.

_____

**PFEIFER, J., dissenting.**

{¶ 38} The majority opinion states, "When the General Assembly enacted R.C. 2953.52, it was certainly aware of the power of the pardon." Majority opinion at ¶ 25. I agree, though I disagree about the import of that fact. The majority opinion concludes that because the General Assembly knew about pardons and nevertheless did not mention them in R.C. 2953.52, "we must presume that its omission of pardoned defendants was intentional * * * [and] [t]hat omission is important here." *Id.* I also think the omission is important, for a different reason from the majority opinion's unstated reason. Just as the General Assembly was aware of the power of the pardon when it enacted R.C. 2953.52, it was also aware of *Pepper Pike v. Doe*, 66 Ohio St.2d 374, 421 N.E.2d 1303 (1981). It is more likely that the General Assembly didn't mention pardons

in R.C. 2953.52 because it was aware that *Pepper Pike* would allow records relating to crimes for which the offender had been pardoned to be sealed than because it was implicitly superseding *Pepper Pike* and legislating that records relating to crimes for which the offender had been pardoned could not be sealed. *See Bresnik v. Beulah Park Ltd. Partnership, Inc.*, 67 Ohio St.3d 302, 304, 617 N.E.2d 1096 (1993) ("Not every statute is to be read as an abrogation of the common law").

{¶ 39} The majority opinion draws exactly the wrong conclusion. It states, "Despite the General Assembly's repeated returns to the subject of criminal record-sealing, it has never shown, or even suggested, any intent to extend this remedy to an offender who has been pardoned." Majority opinion at ¶ 32. Although that is true, it can equally be said that the General Assembly has never stated that records of crimes for which the offender has been pardoned cannot be sealed, even though it is aware that pursuant to *Pepper Pike*, records of such crimes can be sealed in unusual and exceptional circumstances. *Id.* at paragraph two of the syllabus.

{¶ 40} The General Assembly is fully capable of superseding judicial decisions. *E.g.,* 2001 Am.Sub.S.B. No. 97 (amending R.C. 3937.18), Section 3(D) and (E), 149 Ohio Laws, Part I, 789-790. It has not done so with respect to *Pepper Pike*. From that omission and the failure to include the word "pardon" in the statute, I conclude that R.C. 2953.52 does not apply to the records of crimes for which the offender has been pardoned. It takes legalistic legerdemain to conclude otherwise—such as inserting the word "pardon" into a statute that does not include it. *See Columbus-Suburban Coach Lines, Inc. v. Pub. Util. Comm.*, 20 Ohio St.2d 125, 127, 254 N.E.2d 8 (1969) ("it is the duty of this court to give effect to the words used [in a statute], not to delete words used or to insert words not used"). I conclude that R.C. 2953.32 and 2953.52 are wholly inapplicable to the issue before us. *See State v. Boykin*, 138 Ohio St.3d 97, 2013-Ohio-4582, 4

N.E.3d 980, ¶ 17 ("the word 'pardon' does not appear in either [R.C. 2953.32 or 2953.52]").

{¶ 41} In *Pepper Pike*, this court held that "trial courts have authority to order expungement where such unusual and exceptional circumstances make it appropriate to exercise jurisdiction over the matter." *Pepper Pike*, 66 Ohio St.2d 374, 421 N.E.2d 1303, at paragraph two of the syllabus. This holding remains good law, having been neither overruled by this court nor superseded by legislation. *See State ex rel. Morris v. Sullivan*, 81 Ohio St. 79, 90 N.E. 146 (1909), paragraph three of the syllabus ("Statutes are to be read and construed in the light of and with reference to the rules and principles of the common law * * * [and] the legislature will not be presumed or held, to have intended a repeal of the settled rules of the common law unless the language employed by it clearly expresses or imports such intention"). *See Bresnik*, 67 Ohio St.3d at 304, 617 N.E.2d 1096, citing *Sullivan* with approval.

{¶ 42} The authority to order expungement is not unfettered. A court considering expungement "should use a balancing test which weighs the privacy interest of the defendant against the government's legitimate need to maintain records of criminal proceedings." *Pepper Pike,* paragraph two of the syllabus.

{¶ 43} In this case, the trial court found that sealing Radcliff's record was "consistent with the public interest." This finding is not an abuse of the trial court's discretion for a variety of reasons:

{¶ 44} 1. *Pepper Pike*, which states that courts have the authority to seal records even in the absence of a statutory grant of authority.

{¶ 45} 2. R.C. 2967.04(B), which states, "An unconditional pardon relieves the person to whom it is granted of all disabilities arising out of the conviction or convictions from which it is granted."

**{¶ 46}** 3. The fact that R.C. 2953.32 and 2953.52 do not apply to pardons and therefore noncompliance with them cannot justify prohibiting the sealing of records related to crimes for which the offender has been pardoned.

**{¶ 47}** 4. *State ex rel. Atty. Gen. v. Peters*, 43 Ohio St. 629, 650, 4 N.E. 81 (1885), which states, "A full and absolute pardon releases the offender from the entire punishment prescribed for his offense, and from all the disabilities consequent on his conviction."

**{¶ 48}** 5. *State ex rel. Gordon v. Zangerle*, 136 Ohio St. 371, 376, 26 N.E.2d 190 (1940), which states, "A full pardon purges away all guilt and leaves the recipient from a legal standpoint, in the same condition as if the crime had never been committed."

**{¶ 49}** 6. *Knapp v. Thomas*, 39 Ohio St. 377, 381 (1883), which states, "Though sometimes called an act of grace and mercy, a pardon, where properly granted, is also an act of justice, supported by a wise public policy."

**{¶ 50}** 7. An acknowledgment from a most unusual source of authority, the opposing party in this case, the state of Ohio. In *State v. Vanzandt*, ___ Ohio St.3d ___, 2015-Ohio-236, __ N.E.3d __, the state argued in its brief not only that *Pepper Pike* is good law but that it should be extended, stating: "Just as there is judicial authority to seal records in unusual and exceptional cases, there should also be a judicial authority to unseal records in unusual and exceptional cases."

**{¶ 51}** These factors, when considered in aggregate, convince me that the trial court did not act unreasonably, arbitrarily, or unconscionably when it granted Radcliff's request to seal the record of his convictions. It is not unreasonable to conclude that the state's interest in providing records of criminal convictions that occurred at least 30 years ago and for which the offender has been unconditionally pardoned is not much of an interest at all. Certainly Radcliff's privacy interest outweighs the state's limited interest.

**{¶ 52}** I would answer the certified question in the affirmative and reverse the court of appeals. Although there is a certain amount of justice in *Commonwealth v. C.S.*, 517 Pa. 89, 93, 534 A.2d 1053 (1987), in which the Supreme Court of Pennsylvania stated that "[a] pardon without expungement is not a pardon," it is unnecessary in this case to state the proposition so unequivocally. It is enough to say that a trial court has inherent authority to seal the record of a conviction for which the offender has been pardoned pursuant to the standard established in *Pepper Pike*.

**{¶ 53}** The majority opinion's conclusion, that "a court lacks the authority to seal a criminal record of a pardoned offender who does not meet applicable statutory requirements for sealing the record," is, based on the facts of this case, illogically circular, a legalistic Möbius strip. The statutes at issue do not mention the word "pardon" and therefore do not apply to Radcliff. Thus, although the majority opinion states that Radcliff has not complied with "applicable statutory requirements," majority opinion at ¶ 37, the statutory requirements to which the opinion refers are, in fact, irrefutably not applicable to offenders who have been pardoned.

**{¶ 54}** I dissent.

LANZINGER and O'NEILL, JJ., concur in the foregoing opinion.

_____

Ron O'Brien, Franklin County Prosecuting Attorney, and Seth L. Gilbert and Michael P. Walton, Assistant Prosecuting Attorneys, for appellee.

Yeura R. Venters, Franklin County Public Defender, and Timothy E. Pierce and John W. Keeling, Assistant Public Defenders, for appellant.

_____