[Cite as *State v. Namaky*, 2019-Ohio-1474.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-32 |
| | : | |
| v. | : | Trial Court Case No. CRB1100922A-E |
| | : | |
| MICHAEL B. NAMAKY | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of April, 2019.

. . . . . . . . . .

BRITTANY A. DOGGETT, Atty. Reg. No. 0090704, 510 West Main Street, Fairborn, Ohio 45324
        Attorney for Plaintiff-Appellee

DONALD P. MITCHELL, JR., Atty. Reg. No. 0016178, 3732 Fishcreek Road, #267, Stow, Ohio 44224
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} The estate of Michael B. Namaky appeals from a judgment of the Fairborn Municipal Court, which denied the estate's application to seal Namaky's conviction. For the following reasons, the trial court's judgment will be reversed, and the matter will be remanded for further proceedings.

## I. Background

{¶ 2} In 2011, Namaky pled guilty in the Fairborn Municipal Court to disorderly conduct, a fourth-degree misdemeanor, and underage consumption, a first-degree misdemeanor, arising out of the same incident. He paid a $100 fine for each offense, and the case was closed. Namaky died in an automobile collision in April 2018, and approximately two months later, his estate filed an application in the municipal court for an order sealing Namaky's conviction under R.C. 2953.32. The prosecutor was notified of the motion and did not file an objection.

{¶ 3} On July 20, 2018, the trial court held a hearing on the motion. During the hearing, Namaky's father, administrator of the estate, told the court that Namaky was an organ donor and that five individuals had received organ donations following his death. Namaky's father stated that some of the families wanted to exchange personal information and that the sealing of Namaky's record could insulate the organ recipients from discovering potentially negative information about their donor. The prosecutor did not attend the hearing. The court orally expressed doubt about whether it had the statutory authority to seal the conviction of a deceased offender, and at the conclusion of the hearing, it overruled the estate's motion on that basis. The same day, the court filed a judgment entry denying the application "[b]ased on the fact that Defendant is now

deceased."

**{¶ 4}** Namaky's estate, on Namaky's behalf, appeals from the denial of its application, raising two assignments of error.

## II. Authority to Seal Record of Deceased Offender

**{¶ 5}** In its first assignment of error, the estate claims that the trial court erred in concluding that it had no statutory authority to seal Namaky's conviction, based solely on the fact that Namaky is deceased. The second assignment of error argues that the court could have sealed the conviction using its inherent power. We will address these matters together.

**{¶ 6}** The Ohio Supreme Court repeatedly has stated that the sealing of a criminal record is a "privilege, not a right," and an "act of grace created by the state." *See, e.g., State v. Radcliff*, 142 Ohio St.3d 78, 2015-Ohio-235, 28 N.E.3d 69, ¶ 15 (citing other Ohio Supreme Court cases). Consequently, "a court may seal an offender's conviction record 'only when all requirements for eligibility are met.' " *Id.*, quoting *State v. Boykin*, 138 Ohio St.3d 97, 2013-Ohio-4582, 4 N.E.3d 980, ¶ 11. The interpretation of a statute is a question of law, which we review de novo. *State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 6.

**{¶ 7}** When interpreting a statute, the primary concern "is to ascertain and give effect to the intention of the General Assembly." *Id.* at ¶ 7. Legislative intent is largely determined "from the plain language of a statute." *Id.* " 'If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary.' An unambiguous statute must be applied by giving effect to all of its language, without adding or deleting any words chosen by the General Assembly."

(Citation omitted.)   *Id.*, quoting *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.,* 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996).

{¶ 8} "In the usual course, the legislature determines the eligibility for sealing a record." *Radcliff*, 142 Ohio St.3d 78, 2015-Ohio-235, 28 N.E.3d 69, at ¶ 17.   R.C. 2953.32(A)(1) addresses the sealing of a record where the charge has resulted in a conviction.[1]   It permits "an eligible offender" to apply to the sentencing court for the sealing of the record of the case that pertains to the conviction.   *Id.*   When Namaky's application was filed and the trial court ruled on the application, the term "eligible offender" meant "*anyone* who has been convicted of an offense in this state or any other jurisdiction and who has not more than one felony conviction, not more than two misdemeanor convictions, or not more than one felony conviction and one misdemeanor conviction in this state or any other jurisdiction."   (Emphasis added.)   Former R.C. 2953.31(A).[2]

{¶ 9} The term "anyone" is not defined by statute, so we employ its common definition.   *See, e.g., In re Adoption of P.L.H.*, 151 Ohio St.3d 554, 2017-Ohio-5824, 91

---

[1]  R.C. 2953.52 provides for the sealing of a non-conviction record in certain circumstances.

[2] The Ohio legislature gradually has been expanding the group of individuals who may apply for the sealing of a conviction record.   Prior to September 28, 2012, only a "first offender" could apply for the sealing of a conviction record.   Effective September 28, 2012, R.C. 2953.32 was amended to allow an "eligible offender" to apply.   Between September 2012 and September 2014, an "eligible offender" included anyone with "not more than one felony conviction, not more than two misdemeanor convictions if the convictions are not of the same offense, or not more than one felony conviction and one misdemeanor conviction in this state or any other jurisdiction."   See former R.C. 2953.31(A).   In the version of R.C. 2953.31(A) in existence when Namaky's application was filed, the phrase "if the convictions are not of the same offense" was deleted.   *Id.* The current version, effective October 29, 2018, allows persons convicted of "one or more offenses, but not more than five felonies" to apply, provided the convictions meet certain criteria.   *See* R.C. 2953.31(A).

N.E.3d 698, ¶ 30 ("In the absence of a statutory definition, we look to the common usage of 'willful' and 'abandon' to determine their intended meanings."); *White v. Clinton Cty. Bd. of Commrs.*, 76 Ohio St.3d 416, 421, 667 N.E.2d 1223 (1996), fn. 3 (using common definition of "minutes" where the term was not defined in the Revised Code). The term "anyone" is understood to mean "any person at all" (Merriam-Webster; Dictionary.com), "anybody" (Collins English Dictionary; Dictionary.com), and "any person" (Collins English Dictionary; American Heritage Dictionary of the English Language).

{¶ 10} The Ohio Revised Code generally provides that " 'person' includes an individual, corporation, business trust, estate, trust, partnership, and association." R.C. 1.59(C). Similarly, Ohio's criminal code specifically provides that, except in provisions that set forth criminal offenses, the term "person" includes an individual, corporation, business trust, estate, trust, partnership, and association. R.C. 2901.01(B)(1)(b).

{¶ 11} There appears to be no dispute that Namaky, if he were alive, would be an eligible offender. Using the common meaning of "anyone" in conjunction with the broad statutory definition of "person," we conclude that the term "anyone" in R.C. 2953.31(A)(1) also includes a deceased person. Accordingly, Namaky remained an eligible offender following his death.

{¶ 12} R.C. 2953.32 does not expressly state that the estate of an eligible offender may file an application for sealing of the offender's record on the offender's behalf. *Contrast* Tex.Crim.Code Ann. 55.011 (allowing a "close relative" of a deceased person to file a petition for expunction on the person's behalf); Title 18 Pa.Consol.Stat. 9122(b)(2) (allowing criminal history record information to be expunged when an individual has been dead for three years). On the other hand, R.C. Chapter 2953 does not prohibit the filing

of an application to seal the record of a deceased person; the statute merely requires that the offender at issue be an "eligible offender."

{¶ 13} Here, Namaky's father, as administrator of Namaky's estate, filed an application for sealing on behalf of an eligible offender. Accordingly, the trial court had jurisdiction to grant the requested relief.

{¶ 14} Even if we were to conclude that R.C. 2953.32 does not allow for the application to be filed by an estate on behalf of a deceased person, we would conclude that the trial court had inherent authority to seal Namaky's record.

{¶ 15} "The judicial power of the state of Ohio is vested in its constitutional courts, the Supreme Court, the courts of appeals and the courts of common pleas, and such other courts as may be established by law. Section 1, Article IV, Ohio Constitution. Municipal courts are created by statute. R.C. Chapter 1901. Both constitutional and statutory courts are clothed with the judicial power and may exercise that power to the extent of their jurisdiction. Exercise of that power in any manner which determines the individual rights of any person is reserved to the judge or judges of each those courts, who holds office according to law and is commissioned to exercise the judicial power of his or her court." *State v. Wilson*, 102 Ohio App.3d 467, 471, 657 N.E.2d 518 (2d Dist.1995).

{¶ 16} "A court's inherent authority is a power that is neither created nor assailable by acts of the legislature." *Hale v. State*, 55 Ohio St. 210, 215, 45 N.E. 199 (1896). A municipal court is a statutory court, but even a statutory court has the judicial power (i.e., inherent authority) to do those things that are reasonable and necessary for the administration of justice within the scope of its jurisdiction.

{¶ 17} The Ohio Supreme Court has recognized the inherent authority of a court to seal records, independent of statutory authority, where "unusual and exceptional circumstances" exist.   *See Schussheim v. Schussheim,* 137 Ohio St.3d 133, 2013-Ohio-4529, 998 N.E.2d 446; *Pepper Pike v. Doe,* 66 Ohio St.2d 374, 421 N.E.2d 1303 (1981). The basis for that authority is the constitutional right to privacy.   *Schussheim* at ¶ 11. In stating that a trial court had the inherent authority to seal a record pertaining to a dissolved civil protection order, the supreme court stated: "The inherent authority of a court to expunge and seal a record does not turn on whether a proceeding is criminal or civil.   Rather, the determination is whether 'unusual and exceptional circumstances' exist and whether the interests of the applicant outweigh the legitimate interest of the government to maintain the record."   *Id.* at ¶ 16.

{¶ 18} However, in *Radcliff*, 142 Ohio St.3d 78, 2015-Ohio-235, 28 N.E.3d 69, the Ohio Supreme Court emphasized that trial courts do not have broad inherent authority to seal records.   Discussing *Pepper Pike*, which recognized the inherent authority of the municipal court to seal the record of an applicant whose charge had been dismissed with prejudice, the supreme court stated: "Our holding [in *Pepper Pike*] was limited, and driven by two considerations: the unique facts of that case and the absence of legislative guidance."   *Radcliff* at ¶ 20.   The *Radcliff* court noted that when *Pepper Pike* was decided, the Ohio legislature had not enacted a statute to address the situation presented in that case, i.e., "a defendant acquitted of charges brought purely to harass and vex her." *Id.* at ¶ 22.

{¶ 19} *Radcliff* concerned an individual who had received a gubernatorial pardon, but regardless of the legal effect of that pardon for a specific offense, the individual was

not otherwise an "eligible offender," as then-defined by R.C. 2953.32, due to other convictions.[3] The supreme court concluded that the trial court could not exercise inherent authority under those circumstance, stating, "But neither the rule of *Pepper Pike* nor its rationale has vitality when the offender has been convicted and is not a first-time offender." *Radcliff* at ¶ 27. The supreme court held that "a court lacks the authority to seal a criminal record of a pardoned offender who does not meet applicable statutory requirements for sealing the record." *Id.* at ¶ 37.

{¶ 20} *Radcliff* thus instructs that a trial court retains limited inherent authority regarding the sealing of records, to the extent not proscribed by the Ohio legislature. *Accord Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, at ¶ 12 (*Pepper Pike*, which "proceeded in the context of legislative silence," does not authorize the court to use inherent authority to create additional exceptions to R.C. 2953.53(D), a statute that involves "an express legislative prohibition"). The trial court cannot use its inherent powers in a manner inconsistent with the strictures enacted by the legislature, but may exercise judicial discretion in the context of legislative silence, considering, among other things, the spirit of the statute and relevant public-policy concerns. *Id.*

{¶ 21} Here, both the factual circumstances and the procedural posture reflect that the trial court's inherent authority to seal Namaky's record was not curtailed by statute. Namaky was 19-year-old college student when he was convicted of two misdemeanors arising from a singular college incident. While alive, Namaky apparently was an eligible

---

[3] When Radcliff applied for an order sealing his conviction in Franklin County, R.C. 2953.32 required the applicant to be a "first offender." Radcliff apparently had at least seven convictions in several counties, and he received pardons for five convictions, including one conviction in Franklin County. *See Radcliff* at ¶ 5-6.

offender. After Namaky died in an automobile crash seven years after his conviction, he provided life-saving organs to five individuals. Namaky's father wished to provide his son's name to the organ recipients without the blemish of a conviction, and the State registered no objections to the petition. Even assuming the absence of statutory authority that an eligible offender's conviction may be sealed after death, the trial court could have exercised its inherent authority and determined whether Namaky's record should be sealed.

{¶ 22} The estate's assignments of error are sustained.

### III. Conclusion

{¶ 23} The trial court's judgment will be reversed, and the matter will be remanded for further proceedings.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

HALL, J. dissents:

{¶ 24} I conclude that the court had neither statutory nor inherent authority to grant an application to seal the record of an individual filed by the representative of the estate of the individual after his death, and therefore the trial court's denial of the application was correct and should be affirmed. Therefore I, dissent.

### Statutory Authority Does Not Exist to Seal a Decedent's Record

{¶ 25} I agree that when interpreting a statute, the primary concern "is to ascertain and give effect to the intention of the General Assembly." *Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 7. I also agree that an unambiguous statute must be

applied as written.

{¶ 26} With respect to the issue before us, R.C. 2953.32 is unambiguous as to whether the estate of a deceased eligible offender may apply for the sealing of a conviction. It may not. "Eligible offender" is statutorily defined, in part, as "*anyone* who has been convicted of an offense." (Emphasis added.) R.C. 2953.31(A). "Anyone" is not defined. The criminal code does define "person" to include an estate. R.C. 2901.01(B)(1)(b). But the General Assembly chose to use the word "anyone" to define the term "eligible offender," not any "person." Interpretation of "anyone" in this context is limited by the procedure outlined in R.C. 2953.32, which indicates that it applies only when the eligible offender is living. When an application is filed, the statute instructs the court to direct a probation officer "to make inquiries and written reports * * * concerning the applicant." R.C. 2953.32(B). The court must also "[d]etermine whether criminal proceedings are pending against the applicant" and "determine whether the applicant has been rehabilitated to the satisfaction of the court." R.C. 2953.32(C)(1)(b) and (c). Finally, the court must "[w]eigh the interests of the *applicant* in having the records pertaining to the *applicant's* conviction or bail forfeiture sealed against the legitimate needs, if any, of the government to maintain those records." (Emphasis added.) R.C. 2953.32(C)(1)(e). Only then may the court seal a conviction. *See* R.C. 2953.32(C)(2). There are no reasonable means to directly connect with a decedent and evaluate whether he or she is rehabilitated after death. And here the applicant is the personal representative, not the decedent. Therefore, in my opinion, the term "anyone" in R.C. 2953.32(B) does not include the estate representative of a decedent.

{¶ 27} I further note that allowing convictions to be sealed for only living offenders

makes sense. Sealing a conviction allows the offender to put away the past and have a clean slate going forward. It helps mitigate some of the adverse impact and collateral consequences of a conviction—like damage to the offender's reputation and diminished employment prospects. But a deceased offender is no longer subject to the adverse impact or the collateral consequences of a conviction. Sealing a conviction also helps protect the offender's privacy. *See Pepper Pike*, 66 Ohio St.2d 374, 376, 421 N.E.2d 1303 (saying that trial courts in certain circumstances seal criminal records "out of a concern for the preservation of the privacy interest"). But an offender's privacy interests arguably end with death. *See Estate of Leach v. Shapiro*, 13 Ohio App.3d 393, 398, 469 N.E.2d 1047 (9th Dist.1984) ("The right to privacy is a right personal to the individual asserting it. * * * This right lapses with the death of the person who enjoys it      * * *."); *Arnold v. Am. Natl. Red Cross*, 93 Ohio App.3d 564, 580-581, 639 N.E.2d 484 (8th Dist.1994) (saying that a blood donor's death "has the effect of rendering his right to privacy" in the results of an HIV test or diagnosis of AIDS "less compelling," and that the donor's privacy interests against disclosure of his identity based on the reputational harm that could result are "undermined" by his death); *State ex rel. Findlay Publishing Co. v. Schroeder*, 76 Ohio St.3d 580, 583, 669 N.E.2d 835 (1996) (quoting a source that notes the law remains unsettled as to whether deceased persons have privacy interests).

{¶ 28} As the majority points out, the legislatures of other states have enacted statutes that clearly permit the sealing or expungement of a deceased offender's criminal records. For example, in Texas, the expungement statute states that, upon satisfying certain conditions, "[a] person * * * is entitled to have all records and files relating to the arrest expunged." Tex.Crim.Code Ann. 55.01(a). In 2009, Texas enacted a statute that

allows a "close relative of a deceased person" to file a petition on behalf of the deceased person under the expungement statute. Tex.Crim.Code Ann. 55.011. Pennsylvania's expungement statute provides that "[c]riminal history record information may be expunged when: * * * [a]n individual who is the subject of the information has been dead for three years." 18 Pa.Consol.Stat. 9122(b)(2). In Virginia, the expungement statute provides that "a person" "may file a petition * * * requesting expungement." Va.Code Ann. 19.2-392.2(A)(2). Recently, a bill was introduced in the Virginia Legislature that adds a provision allowing a deceased offender's next of kin to file a petition for expungement. *See* 2018 Virginia Senate Bill No. 34.

{¶ 29} Unlike the legislatures of other states, the Ohio General Assembly has not seen fit to extend this privilege to deceased offenders. My determination upon consideration of the statutes from other states is that, in the absence of such similar specific authority for sealing a record of a decedent in the Ohio record-sealing statute, the Ohio statutory right does not extend beyond death, and the trial court was correct to deny the application.

**The Trial Court Did Not Have Inherent Authority to Seal a Decedent's Conviction: The Supreme Court Has Limited Inherent Authority to Acquittals or Exonerations.**

{¶ 30} There is authority for a court to seal a conviction using its inherent power in certain limited circumstances. The Ohio Supreme Court said in *Pepper Pike,* 66 Ohio St.2d 374, 421 N.E.2d 1303, that "even absent statutory authorization, trial courts in unusual and exceptional circumstances expunge criminal records out of a concern for the preservation of the privacy interest." *Id.* at 376. But at the time *Pepper Pike* was decided, the statutory sealing remedy did not yet contain any provision for sealing records when

there had been no conviction. "When we relied upon our own, extrastatutory authority to permit sealing in *Pepper Pike,* we did so because of the importance of the constitutional right to privacy and the lack of any statutory remedy for the person pleading for sealing, who had not been convicted of any crime." *Radcliff*, 142 Ohio St.3d 78, 2015-Ohio-235, 28 N.E.3d 69, at ¶ 26.

{¶ 31} The majority discusses *Radcliff* but does not cite that court's most applicable statement limiting the inherent power referred to in *Pepper Pike.* The inherent power to seal records " 'is limited to cases where the accused has been acquitted or exonerated in some way and protection of the accused's privacy interest is paramount to prevent injustice.' " *Id.* at ¶ 27, quoting *State v. Chiaverini*, 6th Dist. Lucas No. L-00-1306, 2001 WL 256104, *2 (Mar. 16, 2001). "*Pepper Pike*," said the Court, "is 'simply inapposite' to cases involving convicted offenders." *Id.* at ¶ 28, quoting *State v. Weber*, 19 Ohio App.3d 214, 218, 484 N.E.2d 207 (1st Dist.1984).[4]

{¶ 32} Here the trial court had before it an application to seal several convictions, not to seal records where there had been no conviction. In my opinion, the Ohio Supreme Court in *Radcliff* has indicated that any remaining inherent power to seal criminal records does not extend to convictions. Accordingly, the trial court's denial of the application to seal records was also correct because it did not have not have inherent authority to seal conviction records.

{¶ 33} Because I conclude the trial court had neither statutory nor inherent authority to grant an application to seal the records of conviction, I would affirm the

---

[4] Westlaw research for *Pepper Pike* red flags the case and indicates it is "Superseded by Statute as reflected in *State v. Radcliff*."

judgment of the trial court, and therefore I dissent.


Copies sent to:

Brittany A. Doggett
Donald P. Mitchell
Hon. Beth W. Cappelli